**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Sandra Earlise ETHEREDGE,**
**Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 28, 2002.
Filed March 6, 2002.

Stephen D. Kulla, Waynesboro, for appellant.

John M. Lisko, Asst. Dist. Atty., Chambersburg, for Commonwealth, appellee.

Before HUDOCK, BROSKY and OLSZEWSKI, JJ.

BROSKY, J.

¶ 1 Sandra Etheredge appeals from judgment of sentence entered June 20, 2001 following her conviction for Driving Under the Influence of Alcohol (DUI).[2] On appeal, she alleges that the trial court erred in denying her omnibus motion for suppression of evidence by arguing that the evidence was illegally obtained because the roadblock was not established in compliance with the law. Second, she argues that the trial court erred in ordering her to comply with Act 63 of 2000,[3] which requires her to install an ignition interlock device on her vehicle in order to have her driver's license reinstated after a one year suspension is served.[4] After careful consideration, we affirm.

¶ 2 The relevant factual history may be briefly summarized as follows. On May 7, 2000, Appellant was stopped by the Washington Township Police at a sobriety checkpoint located at 1901 East Main Street (State Route 16) in Washington Township, Franklin County, Pennsylvania. Subsequent to the stop, the Appellant's blood alcohol content (BAC) was determined to be .157, and therefore, she was

2. 75 Pa.C.S.A. § 3731.

3. 42 Pa.C.S.A. §§ 7001–7003.

4. By denying Appellant's request to vacate that portion of her sentence dealing with the installation of an ignition interlock system, the trial court implicitly determined that the statute in question is constitutional.

charged with Driving Under the Influence of Alcohol (DUI).

¶ 3 Appellant filed an omnibus motion to suppress all audio, visual and sensory impressions made by the arresting officers as well as the BAC results based on the assertion that there was no probable cause to stop her and that the stop was made pursuant to an illegal DUI checkpoint. Following a hearing on the omnibus motion, in which the defense pursued the issue of whether the checkpoint was properly established, the trial court denied the motion. Thereafter, the Appellant was found guilty at a non-jury trial, and was sentenced to 30 days to 23 months' incarceration, mandated treatment, participation in the multiple offender program, and was ordered to comply with the requirements of Act 63–2000 (requiring the installation of an ignition interlock device). This timely appeal followed.

¶ 4 This Court has previously set forth the proper scope and standard of review of a denial of a suppression motion.

> Our standard [of] review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Korenkiewicz,* 743 A.2d 958, 962 (Pa.Super.1999) (*en banc* ) (quoting *Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 504–505 (1997), *cert.*

*denied,* 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998)).

¶ 5 In Appellant's first issue, she alleges that the trial court erred in denying her suppression motion because the DUI checkpoint in question was not properly established pursuant to the guidelines set forth by our Supreme Court in *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), and *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992). In *Tarbert, supra,* a plurality of our Supreme Court found the DUI checkpoint, as opposed to traditional traffic stops, a legitimate tool for police to identify intoxicated drivers. In that case, our Supreme Court set forth the following guidelines to insure that the intrusiveness of a drunk-driving roadblock would be reduced to a constitutionally acceptable degree. *Tarbert, supra,* at 1043.

> [T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers. The time of the roadblock should be governed by the same consid-

eration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Tarbert, supra,* at 1043 (citing generally *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)).

¶ 6 In *Commonwealth v. Blouse, supra,* our Supreme Court held that systematic, nondiscriminatory, nonarbitrary roadblocks established to detect registration, licensing, and equipment violation are constitutional. The Court in *Blouse, supra,* adopted the *Tarbert* guidelines "because they achieve the goal of assuring that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Blouse,* 611 A.2d at 1180.

¶ 7 Most recently, in *Commonwealth v. Yastrop,* 564 Pa. 338, 768 A.2d 318 (2001), a plurality of our Supreme Court reiterated that "systematic, nondiscriminatory, nonarbitrary roadblocks for the purpose of detecting drunken drivers, if established and conducted in substantial compliance with the *Tarbert–Blouse* guidelines, are constitutional under Article I, Section 8 of the Pennsylvania Constitution." *Id.* at 324.

■ ¶ 8 Having reviewed the record, we find that the checkpoint at issue here was established and conducted in substantial compliance with the *Tarbert–Blouse* guidelines. The testimony elicited at the suppression hearing more than adequately evidences a compliance with those guidelines. According to Officer Prohaska, who was

the coordinator of both the DUI program in Franklin County and the checkpoint in question, there were 66 DUI related accidents in Washington Township from 1994 to 1998, 12 to 14 of which occurred on Route 16 in Washington Township. According to the record, there were 21 DUI arrests on the one mile stretch of road, with the checkpoint site at midpoint, between January 1, 1998 and May 7, 2000. Furthermore, Officer Prohaska testified that adequate notice was provided in the form of a news release, as well as a sign which was placed about a quarter of a mile ahead of the checkpoint indicating there was a "police sobriety checkpoint ahead." Finally, Officer Prohaska testified that motorists were "stopped for a time period of no more than 30 seconds."

¶ 9 For these reasons, we agree with the trial court's assessment that the decision related to the DUI checkpoint was an administrative decision, that appropriate notice was given to the motoring public, and the stop was momentary and as unobtrusive as was practically possible. Accordingly, we find that the sobriety checkpoint here was in substantial compliance with the *Tarbert–Blouse* guidelines. Therefore, we conclude that the trial court committed no error in denying Appellant's omnibus motion for suppression.

¶ 10 The next issue, which is a matter of first impression, involves the constitutionality of the newly enacted Act 63 of 2000.[5] Appellant argues that the statute is unconstitutional because it violates her rights to equal protection and due process under the law.

¶ 11 The Act establishes Chapter 70 of the Judicial Code titled "ignition interlock

---

**5.** We note that the issue of the constitutionality of Act 63 of 2000 is currently under review by our Supreme Court. *Commonwealth v. Young,* 89 WAP 2001 (Pa.2001).

devices"[6] and provides in pertinent part the following:

### § 7002. Ignition interlock systems for driving under the influence

. . .

**(b) Second or subsequent offense.**—In addition to any other requirements imposed by the court, where a person has been convicted of a second or subsequent violation of 75 Pa.C.S. § 3731, the court shall order the installation of an approved ignition interlock device on each motor vehicle owned by the person to be effective upon the restoration of operating privileges by the department. A record shall be submitted to the department when the court has ordered the installation of an approved interlock ignition device. Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.

### § 7003. Additional driver's license restoration requirements

In addition to any other requirements established for the restoration of a person's operating privileges under 75 Pa. C.S. § 1548 (relating to requirements for driving under influence offenders):

(1) Where a person's operating privileges are suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 (relating to driving under the influence of alcohol or controlled substance), or a similar out-of-State offense, and the person seeks a restoration of operating privileges, the court shall certify to the department that each motor vehicle owned by the person has been equipped with an approved ignition interlock system.

(2) A person seeking restoration of operating privileges shall apply to the department for an ignition interlock restricted license under 75 Pa.C.S. § 1951(d) (relating to driver's license and learner's permit) which will be clearly marked to restrict the person operating only motor vehicles equipped with an approved interlock ignition system.

(3) During the year immediately following restoration of the person's operating privilege and thereafter until the person obtains an unrestricted license, the person shall not operate any motor vehicle on a highway within this Commonwealth unless the motor vehicle is equipped with an approved ignition interlock system.

(4) One year from the date of issuance of an ignition interlock restricted license under this section, if otherwise eligible, a person may apply for an additional replacement license under 75 Pa.C.S. § 1951(d) that does not contain the ignition interlock system restriction.

(5) A person whose operating privilege is suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 or a similar out-of-State offense who does not apply for an ignition interlock restricted license shall not be eligible to apply for the restoration of operating privileges for an additional year after otherwise being eligible for restoration under paragraph (1).

42 Pa.C.S.A. § 7002–7003. (2000, June 22, P.L. 466, No. 63, § 1, effective Sept. 30, 2000).

---

**6.** An "ignition interlock system," is a system approved by the "department" (the Pennsylvania Department of Transportation) that prevents a vehicle from being started or operated unless the operator first provides a breath sample indicating that the operator has an alcohol level of less than .025%. *See* 42 Pa. C.S.A. § 7001.

¶ 12 Preliminarily, we note that a statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution. *Commonwealth, Department of Transportation v. McCafferty*, 563 Pa. 146, 758 A.2d 1155, 1160 (2000) (citing *Commonwealth v. Hendrickson*, 555 Pa. 277, 724 A.2d 315 (1999)) (other citations omitted). Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion. *Id.* (citation omitted).

¶ 13 In support of her argument challenging the constitutionality of the statute in question, Appellant alleges it violates the equal protection clauses of both the federal and state constitutions. It is well established that the equal protection provisions of our state constitution are analyzed under the same standards used by the United States Supreme Court. *Commonwealth v. Albert*, 563 Pa. 133, 758 A.2d 1149 (2000) (citing *McCusker v. Workers' Compensation Appeal Board*, 536 Pa. 380, 639 A.2d 776, 777 (1994)) (other citations omitted).

¶ 14 In *Albert, supra,* our Supreme Court reiterated its analysis regarding the concept of equal protection, including its applicability and the level of scrutiny to be employed when examining a certain legislative enactment. Our learned Court stated:

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies ·the classification and have a fair and substantial relationship to the object of the legislation. Judicial review must determine whether any classification is founded on a real and genuine distinction rather than an artificial one. A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification. In undertaking its analysis, the reviewing court is free to hypothesize reasons the legislature might have had for the classification. If the court determines that the classifications are genuine, it cannot declare the classification void even if it might question the soundness or wisdom of the distinction.

> We are also mindful of the different types of classifications and the standards according to which they are weighed:

> The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these ... **[I]f the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.**

*Commonwealth v. Albert,* 563 Pa. 133, 758 A.2d 1149, 1151–1152 (2000) (citing *Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995))

(internal citations omitted) (emphasis added).

¶ 15 Because the statutory scheme involves regulations of operating privileges, a rational basis standard is applicable here. In applying the rational basis test, we must first determine whether the statute in question seeks to promote any legitimate state interest or public value. If so, we must next determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests. *Albert, supra,* at 1152 (citing *Curtis, supra* ).

¶ 16 Clearly, the statute requiring the installation of ignition interlock systems for persons convicted of DUI clearly seeks to promote the compelling interest of protecting our citizens, and the citizens of our sister states, from the dangers posed by Pennsylvania-licensed intoxicated drivers. *Commonwealth v. McCafferty, supra,* at 1161. Appellant does not dispute that this statute seeks to promote a legitimate state interest. However, Appellant does take exception to the second part of the rational basis test as she argues, "that a classification which treats persons differently based upon their ownership of motor vehicles is inappropriate." Brief for Appellant at 21–22. We disagree. We believe requiring this classification of DUI offenders to install ignition interlock devices into cars they own is undoubtedly reasonably related to accomplishing the objective here, which is to promote public safety by keeping intoxicated drivers off of the roads.

¶ 17 We understand that ignition interlock systems are not portable, and they must be installed in each appropriate vehicle. We find that it is entirely rational that the statute in question here directs that interlock devices be installed in those vehicles over which the offender possesses an ownership interest, and are those vehicles which the offender is most likely to drive. We recognize that it is certainly possible that an offender may drive a vehicle borrowed from a relative or a friend. However, the offender's operation of those vehicles **during the period of the license restriction** would remain prohibited by 18 Pa.C.S. § 7514. In light of that prohibition, it is not irrational, nor is it unconstitutional for this statutory scheme to treat borrowed vehicles differently than owned vehicles. We therefore find there is a rational basis for the classifications set forth in Act 63, and that this statute does not violate the equal protection clause of either our federal or state constitution.

¶ 18 Finally, Appellant argues that the statute in question is unconstitutional on the basis that it does not afford Appellant procedural due process. We are unpersuaded by Appellant's brief argument in support of her position and we find this issue unworthy of further review or discussion.

¶ 19 Having found that the checkpoint in question was established and administered in compliance with the *Tarbert–Blouse* guidelines, and having further determined that Act 63 of 2000 is constitutional, we affirm the judgment of sentence.

¶ 20 Judgment of sentence affirmed.