COMMONWEALTH of Pennsylvania,
Appellee

v.

Nathan A. ETCHISON, Appellant.

Superior Court of Pennsylvania.

Submitted June 26, 2006.

Filed Jan. 24, 2007.

Rebecca J. Lozzi, Public Defender, Butler, for appellant.

Randa B. Clark, Asst. Dist. Atty., Butler, for Com., appellee.

BEFORE: TODD, BENDER, and GANTMAN, JJ.

OPINION BY TODD, J.:

¶ 1 Nathan A. Etchison appeals the judgment of sentence imposed by the Butler County Court of Common Pleas following his conviction at a bench trial of driving under the influence ("DUI") in violation of 75 Pa.C.S.A. § 3802(d)(1)(i), (2) and (3), and several summary offenses. For the reasons that follow, we affirm in part, reverse in part, and remand for resentencing.

¶ 2 On September 19, 2004, Appellant was stopped by Trooper Robert Downs of the Pennsylvania State Police after Trooper Downs observed Appellant traveling in the wrong direction on an exit ramp on Route 422 in Butler County. As he approached Appellant, the trooper detected the smell of alcohol, and attempted to administer field sobriety tests. Trooper Downs testified that Appellant failed the tests, at which time the officer transported him to the hospital for blood tests. Appellant's blood alcohol content was .05%, and a subsequent drug screen indicated 53 nanograms of metabolites of cannabinoids.

¶ 3 On August 17, 2005, Appellant was sentenced to 30 days incarceration and a $1000 fine. Appellant's post-sentence motions were denied on December 14, 2005, and this appeal followed, wherein Appellant raises the following issues:

I. Did the trial court err in finding there was sufficient evidence to maintain [Appellant's] conviction of driving under the influence when the Commonwealth failed to establish he was under the influence to a degree which impaired his ability to safely operate a vehicle?

II. Did the trial court err in upholding [Appellant's] conviction of driving under the influence when the controlled substances section of the DUI statute, 75 [Pa.C.S.A.] § 3802(d), violates due process in that it is overbroad?

III. Did the trial court err in upholding [Appellant's] conviction of driving under the influence when the controlled substances section of the

DUI statute, 75 [Pa.C.S.A.] § 3802(d), violates equal protection?

(Appellant's Brief at 7.)

 ¶ 4 Appellant first contends that the evidence was insufficient to support his conviction under 75 Pa.C.S.A. § 3802(d)(2) and (3). When presented with a claim that the evidence was insufficient to sustain a conviction,

> an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact finder to find that all of the elements of the offenses were established beyond a reasonable doubt.

*Commonwealth v. Hawkins,* 549 Pa. 352, 366, 701 A.2d 492, 499 (1997). Furthermore, "[t]he Commonwealth may sustain its burden by proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." *Commonwealth v. Brown,* 701 A.2d 252, 254 (Pa.Super.1997) (citations omitted).

 ¶ 5 We are constrained to agree with Appellant that the evidence was insufficient to support his convictions under Section 3802(d)(2) and (3).[1] Section 3802(d) provides:

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

---

**1.** Appellant does not challenge the sufficiency of his conviction under Subsection 3802(d)(1)(i), although in his argument that Section 3802(d)(1) is unconstitutional, *infra,* Appellant notes that it is Section 3802(d)(1)(iii) as opposed to Section (d)(1)(i), which prohibits driving when metabolitics of a controlled substance are present in the blood. We do not find this undeveloped commentary sufficient to preserve a sufficiency challenge under Section 3802(d)(1)(i).

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III *controlled substance, as defined in the* Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(1)-(3) (footnote omitted).

¶ 6 Appellant asserts that, under Section 3802(d)(2), the Commonwealth failed to establish that he was under the influence of a drug or combination of drugs to a degree which impaired his ability to safely operate his vehicle, noting that "[t]he Commonwealth's expert witness testified under cross-examination that the presence of metabolites is not an indication of present impairment but only that a substance was ingested sometime previously." (Appellant's Brief at 11.) Our review of the record supports Appellant's argument. Indeed, the Commonwealth presented no evidence to support a conclusion that Appellant was under the influence of a drug or combination of drugs at the time he was stopped, such that his ability to drive was impaired. Thus, we hold there was insufficient evidence to convict Appellant under Section 3802(d)(2).

¶ 7 We likewise hold that there was insufficient evidence to convict Appellant under Section 3802(d)(3), which requires that an individual be under the *combined* influence of alcohol *and* a drug or combination of drugs to a degree which impairs his driving ability. In its opinion denying Appellant's post-sentence motion, the trial court noted that

[t]he facts in the present case establish that [Appellant's] car was observed turning around and headed the wrong way on the entrance ramp to State Route 422. In addition, [Appellant] had an odor of alcohol on his breath, glassy and bloodshot eyes, slurred speech, and also exhibited signs of nervousness. [Appellant] further failed the field sobriety tests. The results of the blood test indicated a BAC of .05%.

(Trial Court Opinion, 12/19/05, at 3.) While the factors cited by the trial court suggest that Appellant may have been under the influence of alcohol, because, as previously discussed, no evidence was presented to suggest that Appellant was under the influence of a drug or combination of drugs, the elements of Section 3802(d)(3), which require the combined influence of alcohol *and* a drug, were not met.

¶ 8 Appellant next argues that Section 3802(d)(1), under which he also was convicted, violates due process because it is overbroad and thus that his conviction under that section for the presence of prohibited metabolites should be reversed.[2]

**2.** Throughout his brief Appellant does not specify whether his due process and equal protection arguments are based on the Pennsylvania or the United States Constitution. Such omission does not affect our analysis or disposition.

Appellant again points out that the Commonwealth's witness, Dr. Charles Winek, testified that metabolites in the bloodstream are not an indication of present impairment. He further asserts that:

> [w]ithout a blood test, a person may be unaware they have metabolites in their blood. Section 3802(d) allows for the conviction of an individual based solely on the presence of metabolites, regardless of actual impairment.... An individual could be sober and simply have residue of past usage in their blood.... Passive inhalation of marijuana smoke, false positives or residue in the body long after a period of impairment would all be a violation of the statute. The statute sweeps too broadly and causes conviction of both sober as well as impaired drivers.

(Appellant's Brief at 15.)

¶ 9 Preliminarily, we note that

> [t]he constitutionality of a statute is a question of law; therefore, the scope of appellate review is plenary. *Commonwealth v. Moss,* 852 A.2d 374 (Pa.Super.2004). "The constitutional validity of duly enacted legislation is presumed. The party seeking to overcome the presumption of validity must meet a formidable burden." *Commonwealth v. Haughwout,* 837 A.2d 480, 487 (Pa.Super.2003) (citing *Commonwealth v. Means,* 565 Pa. 309, 773 A.2d 143 (2001)). "A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality." *Commonwealth v. Mayfield,* 574 Pa. 460, 466, 832 A.2d 418, 421 (2003) (internal citations and quotation marks omitted).

*Commonwealth v. Costa,* 861 A.2d 358, 361 (Pa.Super.2004).

¶ 10 As our Supreme Court has explained, "[a] statute is 'overbroad' if by its reach it punishes constitutionally protected activity as well as illegal activity." *Commonwealth v. Barud,* 545 Pa. 297, 305, 681 A.2d 162, 165 (1996). If it does not reach both categories of activity, "then the overbreath challenge must fail." *Costa,* 861 A.2d at 362. There is no constitutional right to the use of marijuana prior to driving; indeed, under Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 *et. seq.,* which has not been deemed unconstitutional, an individual is prohibited from any use of marijuana. Thus, Appellant's challenge to 75 Pa.C.S.A. § 3802(d)(1) must fail.

¶ 11 Finally, Appellant argues that Section 3802(d)(1) is unconstitutional in that it violates equal protection.[3] Specifically, Appellant argues that while the Commonwealth has a legitimate interest in keeping the roadways safe by prosecuting impaired drivers, "this statute would allow for the prosecution of a non-impaired driver. It is not rationally related to its interest of keeping roadways safe." (Appellant's Brief at 16.)

¶ 12 When presented with a claim that a statute violates the equal protection clause, where the case "does not involve a fundamental right or suspect class and does not involve an important right or sensitive classification, our inquiry rests upon whether there exists a rational basis for the classification." *Commonwealth v. McCoy,* 895 A.2d 18, 34 (Pa.Super.2006) (citing *Commonwealth v. Etheredge,* 794 A.2d 391, 396 (Pa.Super.2002)). Further,

> [t]he essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. How-

---

**3.** See note 2, *supra.*

ever, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation. Judicial review must determine whether any classification is founded on a real and genuine distinction rather than an artificial one. A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification. In undertaking its analysis, the reviewing court is free to hypothesize reasons the legislature might have had for the classification. If the court determines that the classifications are genuine, it cannot declare the classification void even if it might question the soundness or wisdom of the distinction.

*McCoy*, 895 A.2d at 34–35 (citing *Etheredge, supra.*)

¶ 13 We reject Appellant's assertion that Section 3802(d)(1) violates equal protection, as there is no legislative classification upon which to base such an argument. As noted previously, a conviction under Section 3802(d)(1) does not require that a driver be impaired; rather, it prohibits the operation of a motor vehicle by *any* driver who has *any* amount of specifically enumerated controlled substances in his blood, regardless of impairment. All drivers are treated the same. Accordingly, we find that Appellant's equal protection challenge lacks merit.

¶ 14 For all of the foregoing reasons, we affirm Appellant's conviction and judgment of sentence under Section 3802(d)(1)(i), and reverse Appellant's convictions under Section 3802(d)(2) and (3) and discharge him as to those charges. As our disposition may have disturbed the trial court's sentencing scheme, however, we remand for resentencing. *See Commonwealth v. Roche*, 783 A.2d 766, 773 (Pa.Super.2001) (remanding for resentencing where vacating of one of multiple convictions may have disturbed trial court's sentencing scheme).

¶ 15 Judgment of sentence **AFFIRMED IN PART** and **REVERSED IN PART.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**

¶ 16 BENDER, J. files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY BENDER, J.:

¶ 1 Although I agree with the Majority that the Commonwealth failed to sustain their burden of proof as to the convictions under both 75 Pa.C.S. § 3802(d)(2) and (d)(3), I would go one step further and find that subsection 3802(d)(1) is unconstitutionally overbroad, rendering the conviction of that offense void as well. Thus, I would reverse Appellant's convictions as to all three subsections and order Appellant discharged.

¶ 2 With respect to the convictions on subsections 3802(d)(2) or (d)(3), a review of the record will expose the Commonwealth's failure of proof as to those subsections and reveal that the convictions rest on a leap to conclusion that contradicts the

expert testimony offered at trial by the Commonwealth.

¶ 3 Notably, the Commonwealth provided no evidence that Appellant had recently ingested marijuana. For instance, there was no evidence that an odor of marijuana emanated from Appellant's person or from his vehicle at the time he was stopped. Nor did Trooper Downs testify that he discovered any physical evidence of recent marijuana usage, such as a pipe with marijuana residue or the tip of a smoked marijuana cigarette. Additionally, there was no damning admission from Appellant that he had recently smoked marijuana, nor was there eyewitness testimony to establish recent ingestion of marijuana. Rather, to support its case, the Commonwealth proved only that Appellant's blood registered positive for inactive metabolites of marijuana.

¶ 4 The Commonwealth's evidence as to marijuana consumption came solely from the testimony of Charles Winek, a respected toxicologist and the director of the Pittsburgh Criminalistics Laboratory. Dr. Winek testified that his laboratory performed an alcohol and controlled substance screen of Appellant's blood. While Dr. Winek testified that Appellant's blood tested positive for cannabinoids of marijuana, in essence, that is all Dr. Winek's testimony proved. Although Dr. Winek testified that Appellant's blood tested positive for cannabinoids at a rate of 53 nanograms per milliliter, N.T. Trial, 7/7/05, at 12, Dr. Winek never offered an expert opinion that Appellant was under the influence of marijuana at the time he drove, let alone that he was under the influence to a degree that impaired his ability to safely drive, as the statute requires. As such, the Commonwealth essentially relies, to sustain its conviction under subsection (d)(2), and presumably under subsection (d)(3) as well, upon the factfinder's leap to conclusion from the presence of marijuana metabol-

ites that Appellant was under the influence of marijuana at the time he drove.

¶ 5 The effect of marijuana upon an individual and the significance of finding 53 nanograms of cannabinoids per milliliter is not a matter within the realm of a layperson. As such, expert testimony was necessary to draw a nexus from the findings to impairment, and none was provided. This lack of testimony should be seen, even if from a purely technical point of view, as a significant enough evidentiary pitfall as to render the evidence insufficient to convict, but the testimony of Dr. Winek actually sheds greater doubt upon the jump to the conclusion necessary to uphold the conviction in question here.

¶ 6 Dr. Winek's testimony, fairly read, demonstrates why one cannot draw any reasonable conclusion of impairment from a positive test for cannabinoids. With respect to the amount of marijuana metabolites found in Appellant's blood, Dr. Winek termed this level "a very, very small amount." *Id.* at 13. Dr. Winek further testified that the metabolites for which Appellant's blood tested positive are stored in fatty tissue and can be detected weeks and even months after consumption. *Id.* at 16. Dr. Winek further admitted that the fact that these metabolites are present was not indicative of impairment, *id.* at 16–17, nor was there a correlation between the level of the nanogram reading and impairment. In fact, Dr. Winek indicated that a positive reading proved only that the individual had consumed marijuana at some time. Moreover, the nanogram reading could not provide an indication of when the marijuana usage took place.

¶ 7 In contrast, Dr. Winek did indicate that finding 11 hydroxy THC would be indicative of usage within an hour or two, *id.* at 20, and that therefore finding 11 hydroxy THC would be more indicative of impairment than finding inactive metabol-

ites. Notably, Appellant did not test positive for this element. Lastly, although Dr. Winek testified that metabolites of marijuana can remain in the body for a period exceeding a month, he provided no indication that such latent presence can cause impairment of one's ability to drive safely. Thus, it is clear upon examining Dr. Winek's testimony that the presence of metabolites provided no evidence at all of impairment from marijuana usage at the time Appellant drove.

¶ 8 While there were facts that arguably would allow the factfinder to conclude that Appellant was impaired, including driving the wrong way on the entrance ramp, an odor of alcohol on Appellant's breath, glassy and bloodshot eyes, slurred speech, failure of field sobriety tests and signs of nervousness, assuming that these factors support the conclusion that Appellant's ability to safely drive was impaired, this conclusion does nothing to prove that this impairment was the result of being under the influence of **a drug or a combination of drugs** as required by (d)(2). Indeed, if anything, the evidence of an odor of alcohol, glassy and bloodshot eyes, slurred speech and a BAC reading of .05%, supports the premise that, although Appellant's impairment was below the statutory level of legal intoxication it did result from alcohol consumption. In short, there was a total lack of proof that Appellant was under the influence **of a drug** to a degree that his ability to safely drive was impaired. Thus, the convictions on subsections 3802(d)(2) and (d)(3) cannot stand.

¶ 9 Turning to Appellant's conviction under subsection (d)(1), Appellant levels two constitutional challenges to that subsection, one of overbreadth and one of violating equal protection. As I agree that subsection (d)(1) violates due process for being overbroad, I will not discuss Appellant's equal protection argument.

¶ 10 The relevant portion of the statute reads:

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S. § 3802(d)(1).

¶ 11 As one can see after referring to subsection (d)(1)(iii), one may violate the DUI statute if he drives while there is present in his bloodstream merely a metabolite of a Schedule I, II or III substance. The crux of Appellant's overbreadth challenge is that the presence of metabolites of marijuana and/or other prohibited drugs in one's bloodstream does not correlate to impairment and as such is not rationally related to the DUI statute's purpose of preventing unsafe drivers from driving.

¶ 12 The Majority contends that Appellant's overbreadth challenge must fail because "there is no constitutional right to the use of marijuana prior to driving; indeed, under Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, ... an individual is prohibited from any use of marijuana." Majority Memorandum, at 6. The Majority's blanket statement fails to consider the fact that meta-

bolites of marijuana can appear in one's system without the unlawful usage of marijuana and through both voluntary and involuntary consumption of marijuana. One such voluntary consumption of marijuana could occur while traveling abroad, in countries where marijuana usage is legal, such as the Netherlands. Since marijuana can stay in one's blood for up to a month or more, one could travel to Amsterdam, partake of legal cannabis products and return to Pennsylvania. As the statute is currently constructed, such tourists will almost certainly violate the DUI law should they drive home from the airport, despite the fact that they are in no way impaired at the time of their driving.

¶ 13 Moreover, the DUI statute applies to all persons operating a motor vehicle in Pennsylvania, not just Pennsylvania residents. Should a resident of Amsterdam be traveling in Pennsylvania after consuming marijuana products legally at home, he would violate the Pennsylvania law, even if not impaired in the slightest degree and even though his usage was lawful. Along the same line, currently, marijuana is legal for medical purposes in Canada, and, of course, Canada is located not terribly far from Pennsylvania's Northwest corner. Thus, a Canadian tourist who is legally consuming marijuana in Canada might very well violate subsection 3802(d)(1) the moment he entered Pennsylvania if situated behind the wheel.

¶ 14 The Majority further fails to recognize that one could conceivably test positive for marijuana metabolites even though he did not personally smoke marijuana. Dr. Winek testified that it was possible one could test positive for marijuana metabolites from being in close proximity to those smoking marijuana. N.T. Trial, at 19. One could also unknowingly consume food containing marijuana, for example brownies or cookies served at a party. Of course, unknowing consumption of marijuana could not constitutionally constitute a crime, yet, once consumed, the metabolites could stay in one's system for a month or more rendering that person exposed to violating subsection 3802(d)(1) should they drive a vehicle while the metabolite was still present in their bloodstream.

¶ 15 For those that believe that the above example is nothing more than an alarmist hypothetical, consider what recently occurred in Los Lunas, New Mexico, involving two police officers. According to allegations in a lawsuit filed against fast food franchise Burger King by Isleta Pueblo Tribal Police Officers Mark Landavazo and Henry Gabaldon, the two officers were on duty when they stopped at a Burger King restaurant and purchased hamburger meals. After eating about one-half of their sandwiches, the two officers noticed a strange taste in their hamburgers. Upon investigation, the officers discovered that marijuana had been sprinkled on top of the meat.[4] If this were to happen in Pennsylvania, and if the officers consumed enough marijuana to produce a positive test for metabolites, then the police officers would be in violation of 3802(d)(1) if they drove before those metabolites cleared their bloodstream. Query: in the above circumstance, would the police department be obligated to remove the officers in question from motor vehicle patrol duty until they tested negative for metabolites? A similar result could occur from the eating of food with a heavy concentration of poppyseeds. Dr. Winek testified that eating poppyseed rolls or cakes could result in a positive test for opiates. *Id.* at 17.

¶ 16 The above notwithstanding, while, as the Majority accurately quotes, some pronouncements of law indicate that the overbreadth principle applies only where

---

4. http://www.cnn.com/2006/LAW/11/07/pot. burgers.ap/index.html.

the provision in question proscribes conduct that has a specific constitutional protection, in actual application the isolation of the exact constitutional right impinged is not always readily apparent. Moreover, it appears that overbreadth principles have been applied to statutes that sweep into conduct that which is merely deemed lawful and not specifically protected by the constitution. This application is exemplified by another case involving a prior version of Pennsylvania's DUI law. In *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996), our Supreme Court found unconstitutional a provision that made it illegal to drive if a driver's BAC, as determined by chemical testing, registered .10% or greater within three hours of driving. The Court noted that, under the DUI statute, it was not illegal to drive with a BAC under .10% yet one could violate the provision in question if he was stopped while his BAC was below .10% but saw his BAC rise above the .10% level after being stopped. Thus, the Court concluded that the statute swept unnecessarily broadly into activity which had not been declared unlawful in Pennsylvania. Notably, the Court did not find that the provision impinged upon constitutionally protected activity. Indeed, the Court could not make that statement inasmuch as it acknowledged in an earlier case involving the DUI statute that "there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving and there is little doubt that the legislature could, if it so chooses, prohibit driving within a certain reasonable time after drinking *any* amount of alcohol (so long as the prohibition was rationally related to the legitimate legislative purpose)." *Commonwealth v. Mikulan*, 504 Pa. 244, 254, 470 A.2d 1339, 1344 (1983).[5]

¶ 17 The United States Supreme Court has also applied the overbreadth principle to activity that did not enjoy a specific constitutional protection. In *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), the Court found a Georgia law that made it illegal to possess obscene materials unconstitutionally overbroad even though the Court acknowledged that the First Amendment protections do not extend to obscene material. In walking along this philosophical tightrope, the Court acknowledged that a state could outlaw and punish the distribution of obscene material but that punishing mere possession of obscene material violated the United States Constitution. This balancing act seemingly indicates a belief by the Court that punishing mere possession went too far.

¶ 18 In my opinion, punishing mere presence in one's blood of metabolites of Schedule I drugs, without proof of impairment, like in *Stanley*, goes too far. Pennsylvania has a legitimate interest in keeping impaired drivers off the road. However, the mere presence of metabolites, without impairment, punishes a status only and bears no relationship to the legitimate interest of the state in keeping the roads safe. Moreover, it could punish individuals whose blood bears metabolites through lawful behavior. As such, I believe that, as drafted, subsection 3802(d)(1) is unconstitutional and, therefore, Appellant's conviction under this subsection must also be reversed.

---

**5.** Notably, here, by criminalizing driving while metabolites are merely present in one's bloodstream, the legislature has not prohibited driving within a reasonable time after consumption. Certainly, criminalizing driving thirty or more days after consumption cannot be deemed a reasonable time.