J-S67034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                       :           PENNSYLVANIA
                                       :
          v.                    :
                                       :
                                     :
ADAM DWIGHT SNIDE        :
                                     :
          Appellant      :      No. 2102 MDA 2018

Appeal from the Judgment of Sentence Entered July 2, 2018
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003511-2017

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED DECEMBER 31, 2020**

Appellant Adam Dwight Snide appeals the judgment of sentence entered by the Court of Common Pleas of Luzerne County after Appellant pled guilty to two counts of dissemination of child pornography and one hundred counts of possession of child pornography.[1] Appellant challenges the constitutionality of his registration requirements under Pennsylvania's Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. § 9799.10 *et seq*., as modified by Acts 10 and 29 of 2018[2] ("SORNA II"). After careful review, we affirm the judgment of sentence.

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 6312(c) and (d), respectively.
[2] Act of Feb. 21, 2018, P.L. 27, No. 10 (Act 10); Act of June 12, 2018, P.L. 140, No. 29 (Act 29).

On April 11, 2018, Appellant pled guilty to the aforementioned charges, admitting he had disseminated two images of minor children being sexually abused by adults and had in his possession over one hundred images/videos of similar child pornography. The criminal complaint states that Appellant disseminated and possessed child pornography from October 9, 2016 to August 1, 2017.

At the plea hearing, the trial court notified Appellant that he would be required to register under SORNA and submit to an evaluation by the Sexual Offenders' Assessment Board (SOAB). Appellant confirmed he reviewed the plea agreement and understood he could be "subject to certain registration requirements that could include anything up to lifetime reporting" under SORNA. Notes of Testimony (N.T.), Plea Hearing, 4/11/18, at 4.

On July 2, 2018, Appellant proceeded to a sentencing hearing, during which he asked for leniency, expressed remorse for his crimes, and noted he had sought therapy for sex offender rehabilitation. N.T., Sentencing, 7/2/18, at 5-9. While the prosecution acknowledged Appellant cooperated with investigators, the arresting detective emphasized how troubled he was by the violent nature of the images and videos that Appellant disseminated and possessed that depicted infants and young children placed in bondage and forced to participate in sexual acts with adults. *Id*. at 10. As Appellant admitted downloading such images for over twenty years, the prosecutor expressed skepticism in Appellant's assertion that he had been rehabilitated with a short period of therapy. *Id*. at 15.

At the conclusion of the hearing, the trial court sentenced Appellant to an aggregate term of incarceration of three to fifteen years' imprisonment to be followed by twenty-one years of consecutive probation. Noting that the SOAB found Appellant was not a Sexually Violent Predator (SVP), the trial court ordered Appellant to register as a Tier II sex offender for twenty-five years under SORNA II. *See* 42 Pa.C.S.A. §§ 9799.14(c)(4); 9799.15(a)(2).

On July 10, 2018, Appellant filed a motion to modify his sentence. On July 12, 2018, Appellant filed a supplemental post-sentence motion in which he challenged the application of SORNA II's registration and reporting requirements. On October 3, 2018, the trial court held a hearing on the post-sentence motion but held its ruling in abeyance to allow the parties to submit briefs. The trial court also granted the defense's request for a thirty-day extension for the resolution of Appellant's post-sentence motions. *See* Pa.R.Crim.P. 720(B)(3)(b).

On December 12, 2018, the trial court entered an order denying Appellant's post-sentence motions. On December 17, 2018, Appellant filed a notice of appeal. Appellant subsequently complied with the trial court's direction to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issue for review in his statement of question presented section of his appellate brief:

> Whether SORNA II contravenes the 5th, 6th and 14th Amendments of the United States Constitution and Pennsylvania Constitution as a criminal punishment, without appropriate due process requiring

that each fact necessary to support imposition of sentence over which the court has no control is submitted to a jury and proven beyond a reasonable doubt? *Apprendi v New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013)?

Appellant's Brief, at 2.

While Appellant raises one general issue in the question presented section of his appellate brief, Appellant includes several claims in the argument section that is not divided into relevant subheadings. Appellant claims his registration requirements under SORNA II violate his due process rights in that he was subjected to an "irrebuttable presumption that he poses a high risk of committing additional sexual offenses [which] deprives him of his fundamental right to reputation." 1925(b) statement, at 2.

Appellant also argues that his registration requirements under SORNA II constitute criminal punishment and thus, must comply with all constitutional and statutory protections related to sentencing. As such, Appellant contends that his registration requirements illegally imposed increased punishment in excess of his term of imprisonment and added an element or fact which was never presented to a fact finder in violation of *Apprendi* and *Alleyne*. Appellant's Brief, at 16.

In doing so, Appellant has not complied with our rules of appellate procedure. Rule 2116(a) specifically provides that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). In addition, our rules of appellate procedure require that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part – in

distinctive type or in type distinctively displayed – the particular point to be treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a).

This Court has generally found that an appellant's failure to include an issue in the statement of questions presented section of his brief results in waiver of that argument. **Commonwealth v. Hodge**, 144 A.3d 170, 172 n.4 (Pa.Super. 2016) (quoting Pa.R.A.P. 2116(a)). However, "such a defect may be overlooked where [the] appellant's brief suggests the specific issue to be reviewed and [the] appellant's failure does not impede our ability to address the merits of the issue." **Werner v. Werner,** 149 A.3d 338, 341 (Pa.Super. 2016).

While Appellant did not list his specific arguments in his statement of questions presented section of his brief, Appellant did set forth each claim in his post-sentence motion, his 1925(b) statement, and in the argument section of his appellate brief. As this briefing deficiency does not hamper our ability to review his claims, we proceed to review the merits of the appeal.

Our standard of review for Appellant's challenges to SORNA's constitutionality is as follows:

> [w]hen an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law. **See Commonwealth v. Atwell**, 785 A.2d 123, 125 (Pa.Super. 2001) (citation omitted). Our consideration of questions of law is plenary. **See id.**, 785 A.2d at 125 (citation omitted). A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. **See Commonwealth v. Etheredge**, 794 A.2d 391,

- 5 -

396 (Pa.Super. 2002) (citations omitted). Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion. ***See id.***, 794 A.2d at 396 (citation omitted).

***Commonwealth v. Cosby***, 224 A.3d 372, 431 (Pa.Super. 2019) (quoting

***Commonwealth v. Howe***, 842 A.2d 436, 441 (Pa.Super. 2004)).

In evaluating Appellant's claims, it is helpful to review this Court's summary of the legislative history of Pennsylvania's schemes for sex offender registration and the precedent reviewing their constitutionality:

> [c]ourts have also referred to SORNA as the Adam Walsh Act. SORNA [was] the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our Supreme Court in ***Commonwealth v. Williams***, ... 557 Pa. 285, 733 A.2d 593 ( [Pa.] 1999). Our Supreme Court held that some portions of Megan's Law II were unconstitutional in ***Commonwealth v. Gomer Williams***, ... 574 Pa. 487, 832 A.2d 962 ([Pa.] 2003), and the General Assembly responded by enacting Megan's Law III on November 24, 2004. The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA [I] on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. § 9799.10(1). SORNA [I] went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. [***Commonwealth***] ***v. Neiman***, ... 624 Pa. 53, 84 A.3d 603, 616 ( [Pa.] 2013). However, by the time it was struck down, Megan's Law III had been replaced by SORNA [I].

*M.S. v. Pennsylvania State Police*, 212 A.3d 1142, 1143 n.1 (Pa.Cmwlth. 2019) (quoting *Dougherty v. Pennsylvania State Police*, 138 A.3d 152, 155 n.8 (Pa. Cmwlth. 2016) (*en banc*)).

SORNA I also failed to withstand constitutional scrutiny. In *Commonwealth v. Muniz*, 640 Pa. 699, 164 A.3d 1189 (2017), *cert. denied*, *Pennsylvania v. Muniz*, --- U.S. ----, 138 S.Ct. 925, 200 L.Ed.2d 213 (2018), our Supreme Court held that

> 1) SORNA's registration provisions constitute punishment notwithstanding the General Assembly's identification of the provisions as nonpunitive; 2) retroactive application of SORNA's registration provisions violates the federal *ex post facto* clause; and 3) retroactive application of SORNA's registration provisions also violates the *ex post facto* clause of the Pennsylvania Constitution.

> *Id.* at 1193. The *Muniz* Court deemed SORNA I's registration provisions to be punitive by applying the seven-factor test established in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

*Cosby*, 224 A.3d at 429.

In response to *Muniz*, the General Assembly enacted legislation to amend SORNA. *See* Act of Feb. 21 2018, P.L. 27, No. 10 (Act 10), later reenacted by Act of June 12, 2018, P.L. 1952, No. 29 (Act 29) (collectively, "SORNA II").[3] Our Supreme Court has clarified that:

> Act 10 split SORNA, which was previously designated in the Sentencing Code as Subchapter H into two subchapters. Revised

---

[3] The Legislature also passed these acts to respond to *Commonwealth v. Butler*, 173 A.3d 1212 (Pa.Super. 2017) (*Butler I*), in which a panel of this Court deemed SORNA's SVP designation process to be unconstitutional as violative of *Apprendi* and *Alleyne* as it increased a defendant's criminal penalty without requiring the factfinder to make relevant findings beyond a reasonable doubt. Thereafter, the Supreme Court reversed the decision, finding SORNA's registration and notification requirements applicable to SVPs do not constitute criminal punishment and as a result, the SVP designation process does not violate *Apprendi* or *Alleyne*. *Commonwealth v. Butler*, --- Pa.---, 226 A.3d 972 (Pa. 2020) ("*Butler II*").

Subchapter H applies to crimes committed on or after December 20, 2012, whereas Subchapter I applies to crimes committed after April 22, 1996, but before December 20, 2012. In essence, Revised Subchapter H retained many of the provisions of SORNA, while Subchapter I imposed arguably less onerous requirements on those who committed offenses prior to December 20, 2012, in an attempt to address this Court's conclusion in [**Commonwealth v.**] **Muniz**, 164 A.3d 1189 (Pa. 2017)] that application of the original provisions of SORNA to these offenders constituted an *ex post facto* violation.

**Commonwealth v. Torsilieri**, ---Pa.---, 232 A.3d 567, 580–81 (2020). As Appellant pled guilty to committing offenses after December 20, 2012, he was required to register under Revised Subchapter H and *ex post facto* principles do not apply.

While the instant appeal was pending, our Supreme Court filed its decision in **Torsilieri**, in which the Commonwealth appealed the trial court's declaration that Revised Subchapter H of SORNA was unconstitutional as violative of numerous protections of the United States and Pennsylvania Constitutions. This Court summarized the decision in **Torsilieri** as follows:

> The defendant expressly challenged the presumption in SORNA II that all sex offenders are dangerous and pose a high risk of recidivism, necessitating registration and notification procedures to protect the public from recidivist sex offenders. The defendant further claimed the presumption was not supported by current research and threatens public safety by preventing the re-integration of offenders as law-abiding citizens. Although the Commonwealth argued that a post-sentence motion hearing was not the proper forum to adjudicate a challenge to the constitutionality of a statute, the trial court permitted the defendant to introduce affidavits and supporting documents of three experts concluding that sex offenders generally have low recidivism rates and questioning the effectiveness of sex offender registration systems. The Commonwealth did not offer any rebuttal expert testimony or documents regarding the defendant's expert witnesses. [**Id**. at ---, 232 A.3d at 573-74.]

The trial court declared the provisions of Revised Subchapter H applicable to the defendant unconstitutional based largely on the scientific evidence the defendant had advanced at the hearing. The trial court concluded that the registration and notification provisions of Revised Subchapter H violated the defendant's right to due process by impairing his right to reputation through utilization of an irrebuttable presumption and because the statutory system failed to provide requisite notice and opportunity to be heard. The trial court further held Revised Subchapter H violated the separation of powers doctrine because it removed the trial court's ability to fashion an individualized sentence. Finally, the trial court held that Revised Subchapter H violated ***Alleyne***/***Apprendi*** by allowing for enhanced punishment neither determined by the fact-finder nor premised upon proof beyond a reasonable doubt. [***Id***. at ---, 232 A.3d at 574-75.] Consequently, the trial court vacated the defendant's sentence to the extent that it required compliance with Revised Subchapter H's registration provisions. ***Id.***

On appeal, our Supreme Court initially rejected the Commonwealth's argument that the trial court lacked authority to consider the constitutionality of Revised Subchapter H. [***Id***. at ---, 232 A.3d at 584] (stating: "[A] viable challenge to legislative findings and related policy determinations can be established by demonstrating a consensus of scientific evidence where the underlying legislative policy infringes constitutional rights. In such cases, it is the responsibility of the court system to protect the rights of the public"). Next, the Supreme Court acknowledged that, **based on the evidence the defendant had presented in the trial court**, he posed "colorable constitutional challenges" to Revised Subchapter H's registration and notification provisions based upon his asserted refutation of two critical legislative determinations: (1) that all sex offenders pose a high risk of recidivism; and (2) that the tier-based registration system of Revised Subchapter H protects the public from the alleged danger of recidivist sex offenses. ***Id.***

Notwithstanding the defendant's proffered evidence, however, the Court decided it was unable to conclude based upon the record before it whether the defendant had sufficiently undermined the validity of the legislative findings supporting Revised Subchapter H's registration and notification provisions, especially in light of the Commonwealth's contradictory scientific

evidence produced on appeal. Noting that "it is not the role of an appellate court to determine the validity of the referenced studies based on mere citations rather than allowing the opportunity for the truths to develop through a hearing on the merits of the evidence," the Court remanded to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting sex offenders' constitutional rights. [***Id***. at ---, 232 A.3d at 585.]

Further, in examining the trial court's analysis of the irrebuttable presumption doctrine and the ***Mendoza-Martinez*** factors, the Court emphasized that the trial court had relied heavily upon its review of the defendant's proffered scientific evidence. [***Id***. at ---, 232 A.3d at 587.] The Court reiterated that although the defendant presented a colorable argument that the General Assembly's factual presumptions have been undermined by recent scientific studies, the Court was unable to affirm the court's conclusions "because the evidence of record does not demonstrate a consensus of scientific evidence...to find a presumption not universally true..., nor the 'clearest proof' needed to overturn the General Assembly's statements that the provisions are not punitive, which we have noted requires more than merely showing disagreement among relevant authorities." [***Id***. at ---, 232 A.3d at 594.] Accordingly, the Court remanded so the trial court could re-evaluate the defendant's proffered evidence weighed against contrary evidence, if any exists. [***Id***. at ---, 232 A.3d at 595.]

***Commonwealth v. Manzano***, --- A.3d ----, 895 MDA 2019, 901 MDA 2019, 2020 WL 4913292 at *10-13 (Pa.Super. Aug. 21, 2020) (emphasis in original).

Moreover, the ***Torsilieri*** Court specifically highlighted the following principles:

[w]e emphasize that all cases are evaluated on the record created in the individual case. Thus, a court need not ignore new scientific evidence merely because a litigant in a prior case provided less convincing evidence. Indeed, this Court will not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights.

Nevertheless, we also emphasize that it will be the rare situation where a court would reevaluate a legislative policy determination, which can only be justified in a case involving the infringement of constitutional rights and a consensus of scientific evidence undermining the legislative determination. We reiterate that while courts are empowered to enforce constitutional rights, they should remain mindful that "**the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements**." *Shoul* [*v. Commonwealth, Dept. of Transportation*], [643 Pa. 302,] 173 A.3d [669,] 678 [(2017).]

*Torsilieri*, 232 A.3d at 595-96 (emphasis added).

In the instant case, Appellant raises similar arguments to those raised in *Torsilieri*. However, unlike *Torsilieri*, Appellant failed to provide the trial court with any scientific evidence or studies to refute the relevant legislative finding that sexual offenders pose a high risk of committing additional sexual offenses.

This Court has recently explained that a defendant's failure to present scientific evidence to support his claim that the underlying legislative policy in Subchapter H infringes on his constitutional rights resulted in waiver as the appellant "failed to satisfy his burden to prove that Revised Subchapter H provisions applicable to him clearly, palpably, and plainly violate the constitution." *Manzano*, --- A.3d ----, 895 MDA 2019, 901 MDA 2019, at *14-15.

While Appellant baldly asserts that scientific studies exist that support his contention, there is no indication in the record created in this case to show that Appellant attempted to produce evidence in support of a colorable

argument that the General Assembly's factual presumptions have been undermined by recent scientific studies. The trial court held a hearing on Appellant's post-sentence motion in which the parties presented oral argument, but the transcript was not included in the certified record because Appellant did not order this particular hearing to be transcribed.

As such, Appellant failed to provide any evidence in support of his challenge to the relevant legislative finding in SORNA II. Consistent with our decision in **Manzano**, we deem Appellant's argument to be waived. It is well-established that:

> "The fundamental tool for appellate review is the official record of the events that occurred in the trial court."**Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa.Super. 2006) (*en banc*) (citation omitted). The certified record consists of "original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court[.]" Pa.R.A.P. 1921. Items that are not part of the certified record cannot be considered on appeal. **See Preston**, 904 A.2d at 6. In Pennsylvania, we place the responsibility of ensuring that the record on appeal is complete "squarely upon the appellant and not upon the appellate courts." **Id.**, at 7 (citing Pa.R.A.P. 1931).

> With regard to transcripts, our Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary for resolution of the issues appellant raises on appeal. **See** Pa.R.A.P. 1911(a). When an appellant fails to adhere to the precepts of Rule 1911 and order all necessary transcripts, "any claims that cannot be resolved in the absence of the necessary transcripts … must be deemed waived for the purpose of appellate review." **Preston**, 904 A.2d at 7 (citation omitted).

*Interest of G.E.W.*, 233 A.3d 893, 899–900 (Pa.Super. 2020) (emphasis in original). The record created in this case does not demonstrate that Appellant presented a colorable claim that General Assembly's legislative findings have been undermined by recent scientific studies. Thus, we conclude that Appellant is not entitled to relief on this basis.

In addition, while Appellant asserts that the amendments made to SORNA II are *de minimis* and its registration requirements remain punitive for the reasons set forth in **Muniz**, Appellant makes no attempt to *apply* the **Mendoza**-**Martinez** factors to properly analyze whether the challenged portions of SORNA II constitute criminal punishment.

In similar circumstances, this Court has declined to assess the merits of a constitutional challenge to SORNA's registration requirements when the appellant's claim was not supported by meaningful analysis as to why the statute should be deemed unconstitutional given the strong presumption of constitutionality afforded to legislation. **Cosby**, 224 A.3d at 430-31 (finding the appellant's challenge to the constitutionality of his registration and reporting requirements as an SVP under SORNA II to be not sufficiently developed when the appellant cited, but did not adequately apply the **Mendoza**-**Martinez** test to the applicable provisions of SORNA II). **See also Manzano,** --- A.3d ----, 895 MDA 2019, 901 MDA 2019 (same).

As a result, we conclude that Appellant has failed to overcome his heavy burden of persuasion to show that the challenged provisions of SORNA II clearly, palpably, and plainly violate our federal and state constitutions.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Dubow joins the memorandum.

Judge Olson concurs in the result

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/2020