J. S33032/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FRANK MAROTTO, | : | No. 2064 MDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered September 4, 2018,
in the Court of Common Pleas of Lancaster County
Criminal Division at No. CP-36-CR-0001886-2018

BEFORE:  LAZARUS, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 12, 2019**

Frank Marotto appeals from the September 4, 2018 judgment of sentence entered in the Court of Common Pleas of Lancaster County following his conviction in a bench trial of driving under the influence of a controlled substance; driving while operating privileges suspended or revoked; operating a motor vehicle without required financial responsibility; and registration and certificate of title required (2 counts).[1]  Appellant received an aggregate sentence of time served (16 days) to 6 months' incarceration and was ordered to pay $1,650 in fines.  We affirm.

The trial court set forth the following factual and procedural history:

> On January 26, 2018, at approximately 6:00 p.m.,
> Officer Jeffrey Myers ("Myers") of the East Earl
> Township Police Department ("EETPD") observed a

---

[1] 75 Pa.C.S.A. §§ 3802(d)(2), 1543(a), 1786(f) and 1301(a), respectively.

slow-moving truck and trailer driving approximately 30 miles per hour in a 45[-]mile[s-]per[-]hour zone. Although he was off-duty, Myers followed the vehicle and saw it cross over the fog line and drive onto the shoulder of the road. Myers observed a number of indicators that led him to believe the driver may be impaired, including drifting out of the lane of travel onto the shoulder, nearly hitting a bicyclist on the shoulder, failing to use a turn signal when turning, abruptly turning, almost hitting several mailboxes due to driving on the shoulder of the road, and frequently decreasing and then increasing the speed of the vehicle. There were no adverse weather conditions. Myers followed the vehicle for approximately ten minutes and did not lose sight of the vehicle.

When he observed the vehicle almost strike the bicyclist, Myers notified Officer Gary Sensenig ("Sensenig") of EETPD, who shortly thereafter initiated a traffic stop. Appellant was driving the vehicle, and he was charged with driving under the influence of a controlled substance ("DUI"), driving while operating privilege is suspended or revoked, operation of a motor vehicle without required financial responsibility, and two counts of registration and certificate of title required.

On September 4, 2018, a bench trial was held and the [trial] court found [a]ppellant guilty on all counts. The [trial] court then imposed a jail sentence of time served (16 days) to six months in Lancaster County Prison ("LCP"). On September 5, 2018, [a]ppellant filed a Motion for Judgment of Acquittal, alleging the verdict was against the weight of the evidence presented at trial. The Commonwealth filed a response in opposition. The post[-]sentence motion was denied on November 19, 2018.

On December 18, 2018, [a]ppellant filed an appeal to the Superior Court. On January 8, 2019, [a]ppellant filed a Concise Statement of Errors Complained of on Appeal ("Statement"), alleging the lower court erred in: (1) allowing the admission of evidence concerning [a]ppellant's refusal to submit to a blood test; and

- 2 -

(2) finding there was sufficient evidence to prove [a]ppellant guilty.

This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

Trial court opinion, 1/30/19 at 1-2 (citations omitted).

Appellant raises the following issues for our review:

> I.   Did the trial court err in admitting the testimony of Officer Sensenig concerning [appellant's] refusal to submit to a blood test?
>
> II.  Did the trial court err in finding [appellant] guilty?

Appellant's brief at 8.

Appellant first claims that the trial court erred in admitting Officer Sensenig's testimony that appellant refused to submit to a blood test to show appellant's consciousness of guilt. (***Id.*** at 12.) Our standard of review of questions concerning the admissibility of evidence is as follows:

> questions concerning the admissibility of evidence are within the sound discretion of the trial court and will only be reversed upon a showing that the court abused its discretion. An abuse of discretion occurs where "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." However, to the extent the question presents as "an issue involving a constitutional right, it is a question of law; thus, our standard of review is ***de novo***, and our scope of review is plenary."

***Commonwealth v. Adams***, 104 A.3d 511, 517 (Pa. 2014) (citations omitted).

Our supreme court, affirming this court's decision in ***Commonwealth v. Bell***, concluded, "the 'evidentiary consequence' provided by Section 1547(e) for refusing to submit to a warrantless blood test – the admission of that refusal at a subsequent trial for DUI – remains constitutionally permissible post-***Birchfield [v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160 (2016)]."[2] ***Commonwealth v. Bell***, 2019 WL 3209999 at *11 (Pa. July 17, 2019), ***affirming Commonwealth v. Bell***, 167 A.3d 744 (Pa.Super. 2017). The ***Bell*** court explained, "appellant agreed (by undertaking to engage in a civil privilege such as operating a motor vehicle) to accept an ultimatum pursuant to which he would either consent to a search or accept non-criminal consequences of a refusal to so consent." ***Bell***, 2019 WL 3209999 at *7 (citation, original quotation marks, and brackets omitted).

Section 1547(e) states, in pertinent part, as follows:

### § 1547.  Chemical testing to determine amount of alcohol or controlled substance

. . . .

**(e)**   **Refusal admissible in evidence.--**In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing

---

[2] We note that our supreme court only addressed whether Section 1547(e) violates the accused's Fourth Amendment right under the United States Constitution, finding that the accused waived his claim as to whether Section 1547(e) violates Article 1, Section 8 of the Pennsylvania Constitution because he failed to preserve the issue in the trial court. ***Bell***, 2019 WL 3209999 at *5.

> as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e).

Here, appellant, relying on the Supreme Court of the United States' decision in **Birchfield**, "believes that allowing a refusal to be entered into evidence in a criminal trial in order to show consciousness of guilt would result in a criminal penalty" in violation of his Fourth Amendment right against unlawful search and seizure. (**Id.** at 13-17; **see also Birchfield** (holding, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense.").) Appellant contends that states, such as Pennsylvania, "may not impose criminal penalties on the refusal to submit to a warrantless blood test." (Appellant's brief at 14.) Appellant argues, "the current caselaw [sic] should be overturned." (**Id.** at 14-16 (citation omitted).) Our supreme court disagrees. **See Bell**, 2019 WL 3209999 at *1-11.

Under our supreme court's recent decision in **Bell**, the officer's testimony that appellant refused to submit to a blood draw was admissible. **See Bell**, 2019 WL 3209999 at *11. Therefore, appellant's claim is without merit.

Appellant next challenges the sufficiency of the evidence to convict him of DUI. (Appellant's brief at 18.) Our standard and scope of review for a sufficiency of the evidence claim is well settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004).

Section 3802 states, in pertinent part, as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

. . . .

**(d)** **Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

. . . .

> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

Here, appellant claims the evidence was insufficient to establish that he was under the influence of a controlled substance to a degree that his ability to safely drive or operate a vehicle was impaired. (Appellant's brief at 18-20.) Appellant contends that "[t]he only evidence against [appellant] consists of an observation of [appellant's] driving by an off-duty police officer." (*Id.* at 19.)

After careful review, we find that the Honorable Donald R. Totaro, in his Rule 1925(a) opinion, ably and comprehensively disposes of appellant's sufficiency claim with appropriate reference to the record and without error of law, and we adopt this opinion as our own. Specifically, the record reveals Officer Myers observed appellant driving erratically prior to being stopped; Officer Sensenig, after initiating the traffic stop, observed that appellant's speech and movement were slow with pinpointed pupils and glassy and bloodshot eyes; appellant admitted he had taken Hydrocodone and was given a shot of Demerol earlier that same day; and appellant refused to submit to a blood test. (*See* trial court opinion, 1/30/19 at 9-13.)

In viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, there is sufficient evidence to enable the trial court, as fact-finder, to conclude the Commonwealth met its burden of proof of establishing beyond a reasonable doubt the elements to support a conviction of driving under the influence. Consequently, appellant's sufficiency claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/12/2019

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**CRIMINAL**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | 2064 MDA 2018 |
| vs. | : | |
| | : | CP-36-CR-0001886-2018 |
| FRANK MAROTTO | : | |

## PA R.A.P. 1925 OPINION

BY TOTARO, J.

Presently before the Superior Court of Pennsylvania is an appeal filed by Frank Marotto ("Appellant") from the judgment of sentence imposed on September 4, 2018, as finalized by the denial of his post-sentence motion on November 19, 2018. For the reasons stated herein, the appeal should be denied.

## BACKGROUND

On January 26, 2018, at approximately 6:00 p.m., Officer Jeffrey Myers ("Myers") of the East Earl Township Police Department ("EETPD") observed a slow-moving truck and trailer driving approximately 30 miles per hour in a 45 mile per hour zone. (Notes of Testimony at 4-7) ("N.T."). Although he was off-duty, Myers followed the vehicle and saw it cross over the fog line and drive onto the shoulder of the road. *Id.* at 7. Myers observed a number of indicators that led him to believe the driver may be impaired, including drifting out of the lane of travel onto the shoulder, nearly hitting a bicyclist on the shoulder, failing to use a turn signal when turning, abruptly turning, almost hitting several mailboxes due to driving on the shoulder of the road, and frequently decreasing and then increasing the speed of the vehicle. *Id.* at 8-10, 15. There were no adverse weather conditions. *Id.* at 8. Myers followed the vehicle for approximately ten minutes and did not lose sight of the vehicle. *Id.* at 11.

When he observed the vehicle almost strike the bicyclist, Myers notified Officer Gary Sensenig ("Sensenig") of EETPD, who shortly thereafter initiated a traffic stop. (N.T. at 10-12). Appellant was driving the vehicle, and he was charged with driving under the influence of a controlled substance ("DUI"), driving while operating privilege is suspended or revoked, operation of a motor vehicle without required financial responsibility, and two counts of registration and certificate of title required.[1] *See* Criminal Information.

On September 4, 2018, a bench trial was held and the court found Appellant guilty on all counts. (N.T. at 84). The court then imposed a jail sentence of time served (16 days) to six months in Lancaster County Prison ("LCP"). *Id.* at 90-91. On September 5, 2018, Appellant filed a Motion for Judgment of Acquittal, alleging the verdict was against the weight of the evidence presented at trial. *See* Post-Sentence Motion. The Commonwealth filed a response in opposition. *See* Commonwealth's Answer to Defendant's Post-Sentence Motion for Judgment of Acquittal. The post sentence motion was denied on November 19, 2018. *See* Order, 11/19/2018.

On December 18, 2018, Appellant filed an appeal to the Superior Court. *See* Notice of Appeal. On January 8, 2019, Appellant filed a Concise Statement of Errors Complained of on Appeal ("Statement"), alleging the lower court erred in: (1) allowing the admission of evidence concerning Appellant's refusal to submit to a blood test; and (2) finding there was sufficient evidence to prove Appellant guilty. *See* Statement.

This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

---

[1] 75 Pa. C.S.A. § 3802(d)(2), 75 Pa. C.S.A. § 1543(a), 75 Pa. C.S.A. § 1786(f), and 75 Pa. C.S.A. § 1301(a), respectively.

2

## DISCUSSION

Officer Myers testified at trial that as part of his police training, he was taught to recognize if someone is intoxicated or under the influence of controlled substances in both their individual capacity and while operating a vehicle. (N.T. at 5). He has had many opportunities to investigate individuals who he believed were impaired while behind the wheel of a car, and to interact with individuals who were under the influence of alcohol or a controlled substance. *Id.* Typical indicators of an intoxicated driver include weaving in and out of their lane, increasing or decreasing their speed, and erratic movements. *Id.* at 5-6. Furthermore, an intoxicated individual will likely have slurred speech, long drawn out speech, bloodshot eyes, glassy eyes, pinpoint pupils, and they may stagger. *Id.* at 6.

While he was driving to work in his personal vehicle just after 6:00 p.m. on January 26, 2018, Myers caught up to a truck towing a trailer. (N.T. at 6-7). Myers noted that while the truck and trailer were crossing a bridge, the vehicle moved off onto the shoulder of the road and drove in the shoulder across the entire bridge. *Id.* at 7. The vehicle then slowed down significantly to about 30 m.p.h. in a 45 m.p.h. speed zone. *Id.* Myers stated it was getting dark outside but there were no adverse weather conditions. *Id.* at 7-8.

Myers followed the vehicle for ten minutes and noted a number of indicators that led him to believe the driver was impaired. (N.T. at 8). The truck and trailer drifted onto the shoulder of the road before coming back into the lane of travel at least four or five times. *Id.* at 8-9, 16. One occasion occurred on a straightaway when the vehicle came within inches of hitting a bicyclist who was riding on the shoulder. *Id.* at 9. Although Myers could see the flashing red light on the back of the bike from his location behind the truck and trailer, the vehicle failed to move over.

3

*Id.* The vehicle abruptly made a right turn and did not signal. *Id.* There were several points where the vehicle was so close to the edge of the road that it almost hit mailboxes. *Id.* at 10. Additionally, the vehicle was constantly slowing down and then speeding up. *Id.* at 15, 17.

When he saw the vehicle swerve and almost hit the bicyclist, Myers called Officer Sensenig to report his observations. (N.T. at 10). Eventually, Myers pulled off to the side of the road and allowed Sensenig to pull in behind the truck and trailer. *Id.* at 10-11. Sensenig then initiated a traffic stop of the suspect vehicle. *Id.* at 11. Myers went to the police station to start his shift, and when he returned to the traffic stop Sensenig had Appellant in custody. *Id.* at 11-12. When he later interacted with Appellant at the police station, Myers found that Appellant's speech and movements were slow and his pupils were very pinpoint. *Id.* at 21. Based on his training, experience, and observations, Myers opined that the driving was consistent with someone who was under the influence, and Appellant was unable to control or operate his vehicle in a safe manner. *Id.* at 13, 19.

Officer Sensenig testified that he has had training in field sobriety testing and extensive training in detecting operators who are impaired based on their driving and physical appearance. (N.T. at 22-23). Since becoming a police officer, Sensenig has made about 35 DUI arrests. *Id.* at 23. He has also come into contact with and observed people under the influence of controlled substances as a police officer, and as a nationally registered paramedic for the past seven years with extensive training in pharmacology. *Id.* at 24, 51. Sensenig is currently working for the Lancaster County Drug Task Force. *Id.* at 22. According to Sensenig, manner of speech, movement, balance, and glassy or bloodshot eyes are common signs exhibited by individuals who are under the influence of controlled substances. *Id.* at 24-25. Furthermore, controlled

4

substances have an adverse effect on one's ability to operate a vehicle because they impair judgment and the ability to multitask. *Id.* at 25.

On January 26, 2018, Sensenig was working as a uniformed patrol officer in a marked cruiser when he was notified by Myers of an erratic driver. (N.T. at 25-27). Sensenig intercepted the suspect vehicle, initiated a traffic stop, and identified Appellant as the driver of the vehicle. *Id.* at 27-28. Upon making contact with Appellant, Sensenig "immediately observed that his pupils were abnormally pinpoint per the dark lighting conditions outside, and that his eyes were glassy and bloodshot." *Id.* at 29. When he observed the pupils of the two passengers in the same lighting conditions, "their pupils were double, if not triple, in size and were appropriately sized for the lighting conditions." *Id.* at 30. According to Sensenig, Appellant's bloodshot eyes and pinpoint pupils were classic indicators of someone who was impaired by narcotics or opiates. *Id.*

When asked, Appellant denied being under the influence of heroin, but he did admit he had a prescription for Hydrocodone and he was recently given "a nasty shot of Demerol." (N.T. at 30-31). Sensenig noted that Hydrocodone would constrict pupils. *Id.* at 57.

Sensenig asked Appellant to step out of the vehicle to perform standardized field sobriety testing on a level surface that was dry and free of any debris. (N.T. at 31-32). When he was asked to perform the walk and turn test, Appellant stated he would not be able to perform the test due to his swollen leg and a problem with his feet. *Id.* at 34. Sensenig next attempted to administer the Romberg Balance Test, but the results were inconclusive because Appellant appeared to understand the instructions for the tests but was just unable to complete them. *Id.*

Sensenig again examined Appellant's pupils and eyes, noting they were still extremely pinpointed even when the flashlight was not being pointed in his eyes. (N.T. at 34). When he

5

moved his flashlight, Appellant's pupils did not change. *Id.* at 34-35. Sensenig testified that pupils normally are dilated at night to allow the maximum amount of light in, and they constrict when they come into contact with light, but they would not constrict to a pinpoint. *Id.* at 56.[2]

Based on his training, experience, erratic driving observed by Officer Myers, and his own observations of Appellant, Sensenig concluded that Appellant was under the influence of a controlled substance that impaired his ability to drive. (N.T. at 37-38). As a result, Appellant was placed under arrest for DUI and related traffic summaries. *Id.*[3]

While at the police station, Sensenig asked Appellant to submit to a blood test to determine whether he was under the influence of a narcotic or opioid. (N.T. at 39). Sensenig read from a PennDOT DL-26 form, in which Appellant was told that if he refused to submit to the blood test his operating privileges would be suspended for at least twelve months. *Id.* at 43-44. When asked if he would submit to the test, Appellant responded "I'm not taking your blood test. I was just injected with all kinds of stuff." *Id.* at 44-45.[4]

In his testimony, Appellant stated he was not under the influence of alcohol or narcotics on the evening in question and he did not feel impaired. (N.T. at 62). Rather, he was suffering

---

[2] Sensenig testified that he first attempted the Horizontal Gaze Nystagmus (HGN) test. (N.T. at 32). However, trial counsel objected to the admission of the HGN test and the court sustained the objection because there had been no Frye hearing to determine admissibility. *Id.* at 32-33.

[3] When Sensenig asked Appellant for his license, registration, and proof of insurance, Appellant was unable to provide any of those items. (N.T. at 29). Sensenig then ran Appellant's driving record which showed that Appellant's license was suspended. *Id.* at 29, 38-39.

[4] Without supporting case law, trial counsel objected to the introduction of Appellant's refusal because it was pursuant to a warrantless search. (N.T. at 40-41). The Commonwealth responded by arguing this was an administrative sanction which is admissible for consciousness of guilt. *Id.* at 40. While recognizing the need for a warrant to draw blood and introduce the results thereof, the court overruled the objection because there is no need for a warrant to read the DL-26 form or admit the response thereto for purposes of consciousness of guilt. *Id.* at 40-43.

from physical ailments that made it difficult for him to walk and balance. *Id.* at 63-64. The bright lights were hurting his eyes. *Id.* at 65. Further, Appellant stated he pulled his truck and trailer over to the shoulder of the road several times so a tailgating car could pass. *Id.* at 59-60.

Nevertheless, Appellant admitted he took Hydrocodone earlier that same day. (N.T. at 67). Moreover, Appellant was given a shot of Demerol at the hospital earlier that morning to relax his muscles and relieve his pain. *Id.* at 72. While he did not think any medication given to him at the hospital would have affected him in any way, Appellant agreed it was possible the Hydrocodone would show up in his system because he had taken the dose within the past 24 hours. *Id.* at 73-74. He was concerned about submitting to the blood test because something from the hospital visit could show up in his blood. *Id.* at 68. Additionally, Appellant acknowledged he did not motion for the car behind him to pass. *Id.* at 71.[5]

In rebuttal, Sensenig testified to previous interactions with Appellant and noted that Appellant's appearance and behavior on the night of this incident differed from his appearance and behavior during previous encounters. (N.T. at 77-79). For example, Sensenig noted that Appellant's pinpoint pupils, glassy eyes, and bloodshot eyes on the night in question were different from how his eyes appeared during previous encounters. *Id.*

I. **Did the trial court err by allowing the admission of evidence concerning Appellant's refusal to submit to a blood test?**

While acknowledging that current case law allows for the admission of an individual's refusal to submit to a blood test to show consciousness of guilt, Appellant argues the trial court erred in allowing the admission of his refusal and case law should be overturned. *See* Statement.

---

[5] Officer Myers testified that he did not think Appellant was pulling onto the shoulder to allow him to pass, as Appellant never activated his hazard lights or waved Myers past him. (N.T. at 16, 20).

7

A trial court's evidentiary ruling will stand absent an abuse of discretion. *Commonwealth v. Rivera*, 983 A.2d 1211, 1228 (Pa. 2009). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)). The fact that a reviewing court might have reached a different conclusion than the trial court is not sufficient for a finding of an abuse of discretion. *Commonwealth v. Hairston*, 84 A.3d 657, 664-65 (Pa. 2014).

Under 75 Pa.C.S.A. § 1547(e):

> **(e) Refusal admissible in evidence.**--In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(e). In *Commonwealth v. Bell*, 167 A.3d 744 (Pa. Super. 2017), the Superior Court held that the defendant had no constitutional right to refuse a blood test upon his lawful arrest for DUI, and thus it was constitutionally permissible for the prosecution to introduce evidence of this refusal at his trial on DUI charges to show consciousness of guilt. *Id.* at 749. The court, interpreting *Birchfield v. North Dakota*, 579 U.S. __, 136 S.Ct. 2160 (2016), concluded that based on the United States Supreme Court's language approving civil penalties in implied consent laws, it was therefore reasonable to deem that motorists have consented to civil penalties and evidentiary consequences if they choose to refuse to submit to chemical testing upon a lawful arrest for DUI. *Bell*, 167 A.3d at 750.

8

Here, Appellant was arrested for driving under the influence of a controlled substance and was asked to submit to a blood test after being told his license would be suspended if he refused to do so. Appellant then refused the blood draw. As such, the court was permitted to consider Appellant's refusal as evidence of consciousness of guilt. Because the admission of Appellant's refusal to submit to the blood draw complied with current applicable case law, the court did not abuse its discretion. Assuming, *arguendo,* the court erred in allowing this evidence, the error was harmless because other properly admitted evidence was sufficient to establish Appellant's guilt beyond a reasonable doubt. *See Commonwealth v. Yockey*, 158 A.3d 1246, 1254 (Pa. Super. 2017) (an erroneous ruling on an evidentiary issue does not automatically entitle a defendant to relief where the error was harmless).

## II. Did the Commonwealth present sufficient evidence to prove beyond a reasonable doubt that Appellant committed the offense of driving under the influence?

Appellant next contends the evidence was insufficient to find him guilty because there was no blood test to prove he was intoxicated, he was unable to complete any of the field sobriety tests due to his physical impairment, and the only evidence presented consisted of an observation by an off-duty police officer whose personal vehicle did not have video equipment which could have been used to record Appellant's driving. *See* Statement.[6]

To preserve a sufficiency of the evidence claim, a 1925(b) statement must specify the elements for which the evidence was insufficient. *Commonwealth v. Manley*, 985 A.2d 256, 262

---

[6] The court found Appellant guilty of DUI after considering all evidence presented at trial, including the erratic driving, constricted pupils, Appellant's admission to taking Hydrocodone and Demerol that day, his consciousness of guilt by refusing to submit to blood testing despite the loss of license, the opinion of Officer Myers that Appellant was under the influence of a controlled substance which impaired his ability to drive, and the opinion of Officer Sensenig that Appellant was driving under the influence of a controlled substance that impaired his ability to drive. (N.T. at 83-84).

9

(Pa. Super. 2009).[7] In the present case, because Appellant has specified the crime and the element upon which the evidence was insufficient, he has preserved this claim.

Appellate courts are governed by the following principles when reviewing a sufficiency of the evidence claim:

> [The] standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. [The Court] may not weigh the evidence or substitute [its] judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence. For purposes of [the Court's] review under these principles, [the Court] must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Love*, 896 A.2d 1276, 1283 (Pa. Super. 2006) (internal quotations and citations omitted). "[I]t is permissible for the trier of fact to draw inferences based on the evidence presented by the Commonwealth." *Commonwealth v. Brosko*, 365 A.2d 867, 869 (Pa. Super. 1976). Furthermore, the Commonwealth may sustain its burden of proof by circumstantial evidence alone, "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Lee*, 956 A.2d 1024, 1027 (Pa. Super. 2008); *Commonwealth v. Steele*, 559 A.2d 904, 909 (Pa. 1989).

---

[7] In *Manley*, the defendant waived any challenge to the sufficiency of the evidence where the statement did not specify how the evidence failed to establish the elements of the offenses. 985 A.2d at 262. In *Commonwealth v. Freeman*, 128 A.3d 1231 (Pa. Super. 2015), the defendant waived his challenge to the sufficiency of the evidence where he contended "the evidence at trial was insufficient to sustain a conviction of the crimes charged," the statement did not specify which element or elements of the relevant crimes, and it did not specify which crimes the Commonwealth failed to prove beyond a reasonable doubt. *Id.* at 1247-48.

10

The relevant section of the DUI statute involving controlled substances is as follows:

**(d) Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa. C.S.A. § 3802(d)(2). The Commonwealth must prove "that [Appellant] was under the influence of a drug to a degree that impairs his or her ability to safely drive or operate a vehicle." *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008).

In *Commonwealth v. Etchison*, 916 A.2d 1169 (Pa. Super. 2007), the Superior Court found there was insufficient evidence to uphold the defendant's DUI charge involving controlled substances where the defendant was observed by a state trooper traveling in the wrong direction on an exit ramp, the defendant failed field sobriety tests, and his blood test revealed 53 nanograms of metabolites of cannabinoids. *Id.* at 1171. The Superior Court reasoned that the Commonwealth presented no evidence to support a conclusion that the defendant was under the influence of a drug or combination of drugs at the time he was stopped such that his ability to drive was impaired, in part due to testimony from a Commonwealth expert witness that the presence of metabolites of cannabinoids is not an indication of present impairment but only that a substance was previously ingested. *Id.* at 1172.

However, in *Williamson*, the Superior Court found that "[a]ll of this evidence supports the Commonwealth's case-in-chief to fulfill its burden of proof that Williamson was unfit to operate a vehicle as defined in section 3802(d)(2)," where the Commonwealth planned to present evidence of the defendant's erratic driving prior to arrest, testimony from the arresting officer

11

regarding defendant's demeanor, her failure of two field sobriety tests, and a lab report showing that the defendant's urine tested positive for the presence of controlled substances. 962 A.2d at 1204. Additionally, Williamson herself admitted to ingesting two different drugs hours before the traffic stop. *Id.* at 1206.

The present case is analogous to *Williamson*. Officer Myers testified that he was trained to recognize whether a driver is intoxicated or under the influence of controlled substances. He has also had many opportunities to investigate individuals who he believed were impaired while behind the wheel of a car. Typical indicators of an intoxicated driver include weaving in and out of their lane, increasing or decreasing their speed, and erratic movements.

In this case, Appellant was driving erratically by going approximately 15 miles under the speed limit, decreasing and increasing his vehicle speed, weaving back and forth onto the shoulder of the road, almost striking a bicyclist who was on the shoulder of the road, almost striking several mailboxes off the roadway, and making an abrupt turn without signaling. When he later interacted with Appellant at the police station, Myers found that Appellant's speech and movements were slow and his pupils were very pinpoint. Based on his training, experience, and observations, Myers opined that the driving was consistent with someone who was under the influence, and Appellant was unable to control or operate his vehicle in a safe manner.

Officer Sensenig has extensive training in pharmacology, he received extensive training in detecting impaired drivers, and he has made about 35 DUI arrests. He has also observed people under the influence of controlled substances while working for several years as a paramedic. Sensenig initiated the traffic stop in the instant case and immediately observed that Appellant's pupils were abnormally pinpoint for the dark lighting conditions, particularly in

12

comparison to the two passengers. Appellant's eyes were also glassy and bloodshot. When Sensenig moved his flashlight, Appellant's pupil size did not change. From previous interactions, Sensenig noticed that the appearance of Appellant's eyes during this incident was not typical. Based on his training, experience and observations, Sensenig concluded that Appellant was under the influence of a controlled substance which impaired his ability to drive.

Appellant was unable to perform field sobriety tests because of injuries. Nevertheless, Appellant admitted he took Hydrocodone and was given a shot of Demerol earlier that day. Furthermore, Appellant demonstrated a consciousness of guilt by refusing to submit a blood sample, stating he was concerned the drugs from the hospital may show up on the screen and there was a chance the dose of Hydrocodone he took that morning was still in his system.

Based on the foregoing, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, the Commonwealth did present sufficient evidence to prove beyond a reasonable doubt that Appellant was under the influence of a drug or combination of drugs to a degree which impaired his ability to safely drive, operate, or be in actual physical control of the movement of his vehicle.

## CONCLUSION

The trial court did not err when it allowed the admission of evidence concerning Appellant's refusal to submit to a blood test. Moreover, the evidence was sufficient to convict Appellant of DUI. Therefore, this appeal should be denied.

BY THE COURT:

January 30, 2019
DATE

DONALD R. TOTARO, JUDGE

13