J-S03044-21

2021 PA Super 143

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD SCOTT MORGAN, | : | |
| | : | No. 658 WDA 2020 |
| Appellant | | |

Appeal from the Judgment of Sentence Entered March 6, 2020
in the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0000991-2011

BEFORE:     DUBOW, J., MURRAY, J. and STRASSBURGER, J.*

OPINION BY DUBOW, J.:                                          **FILED: JULY 13, 2021**

Appellant, Ronald Scott Morgan, appeals from the Judgment of Sentence entered on March 6, 2020, wherein the sentencing court resentenced Appellant to the same aggregate sentence as his original sentence. After careful review, we affirm Appellant's designation as a sexually violent predator ("SVP"), vacate his judgment of sentence, and remand for resentencing.

In May 2013, a jury convicted Appellant of one count each of Possession of a Controlled Substance, Possession of a Small Amount of Marijuana, Statutory Sexual Assault, Aggravated Indecent Assault, Indecent Assault, Endangering the Welfare of Children, and Corruption of Minors; two counts each of Involuntary Deviate Sexual Intercourse ("IDSI"); and 104 counts each of Sexual Abuse of Children (Photographing, Videotaping, Depicting on Computer or Filming Sexual Acts) and Sexual Abuse of Children (Child

_____

* Judge Strassburger did not participate in the consideration or decision of this case.

Pornography).[1] The court sentenced Appellant to an aggregate term of 182 to 364 months of imprisonment.[2] After a hearing, the court also designated him an SVP and lifetime registrant under The Sexual Offender Registration and Notification Act ("SORNA").[3] Appellant timely appealed, but this Court denied relief. **See Commonwealth v. Morgan**, 135 A.3d 661 (Pa. Super. 2015) (unpublished memorandum).

On January 12, 2017, Appellant timely sought collateral relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541-46, challenging the legality of his sentence and the effective assistance of counsel. Following a hearing, the PCRA court entered an order on May 21, 2018, partially granted the petition and vacated Appellant's sentence because the mandatory

---

[1] 35 P.S. §§ 780-113(a)(16) and (a)(31), 18 Pa.C.S. §§ 3122.1, 3125(a)(8), 3126(a)(8), 4304(a)(1), 6301(a)(1), 3123(a)(7), 6312(b), and 6312(d), respectively.

[2] Specifically, the court sentenced Appellant to the mandatory minimum sentence of ten to twenty years of imprisonment for each count of IDSI, set to run concurrently to each other; a concurrent term of one to two years of imprisonment for Statutory Sexual Assault; a consecutive term of 36 to 72 months of imprisonment for Aggravated Indecent Assault; fourteen to twenty-eight months of imprisonment for each count of Sexual Abuse of Children (Photographing), set to run concurrently to each other and consecutively to the sentences imposed at the first count of IDSI and Aggravated Indecent Assault; a consecutive term of one to two years of imprisonment for Endangering the Welfare of Children; a concurrent term of nine to eighteen months of imprisonment for Corruption of Minors, and guilty without further penalty at the remaining counts.

[3] Act of Feb. 21, 2018, P.L. 27, No. 10 (Act 10); Act of June 12, 2018, P.L. 140, No. 29 (Act 29) (collectively, SORNA II). **See also** Act of Dec. 20, 2011, P.L. 446, No. 111, *as amended*, 42 Pa.C.S. §§ 9799.10 to 9799.41 (SORNA I).

minimum sentences imposed at the two IDSI convictions were illegal in light of **Alleyne v. United States**, 570 U.S. 99 (2013). The PCRA court denied the petition in all other respects. Appellant timely appealed, but this Court denied relief. **See Commonwealth v. Morgan**, 221 A.3d 1228 (Pa. Super. 2019) (unpublished memorandum).

On March 6, 2020, the court held a resentencing hearing and imposed the same aggregate sentence of 182 to 364 months of imprisonment.[4] Appellant timely filed a Post-Sentence Motion, challenging the constitutionality of his SVP designation, the discretionary aspects of his sentence, and seeking credit for time served. As to his sentence, he argued the court erred by imposing consecutive IDSI sentences and failing to consider his rehabilitative needs, resulting in his receiving the same sentence that had been previously vacated. The court granted the motion for time credit and otherwise denied relief.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion, referring us in part to its June 10, 2020 Opinion disposing of the Post-Sentence Motion.

_____

[4] Specifically, instead of imposing the prior mandatory minimum sentence of ten to twenty years of imprisonment at each count of IDSI to run concurrent to each other as in the original sentence, the court imposed consecutive standard-range sentences of five to ten years of imprisonment at each count, for a total aggregate sentence of ten to twenty years of imprisonment for the two IDSI counts. The court reimposed the original sentences at the remaining counts, resulting in the same aggregate sentence. The court did not disturb Appellant's SVP designation.

Appellant raises the following issues on appeal:

1. [Whether] the trial court abuse[d] its discretion when it resentenced Appellant to the same sentence that was previously imposed following the PCRA court's grant of Ap[p]ellant's relief on his illegal mandatory minimum sentence claim in that the trial court's new sentence merely continued to impose the previously vacated minimum sentence, the trial court failed to consider, as it must, all required sentencing factors set forth in the Sentencing Code (specifically, 42 Pa.C.S. § 9721(b) and 42 Pa.C.S. § 9725), and the trial court failed to order a new pre-sentence investigation report, resulting in a sentence that was not individually tailored to the Appellant, requiring another resentencing hearing[; and]

2. [Whether] the [SVP] designation as provided under [SORNA] is unconstitutional because it violates Appellant's fundamental right to protect his reputation as secured by Article 1, Section 1 of the Pennsylvania Constitution[.]

Appellant's Br. at 15 (lower court answers and unnecessary capitalization omitted).

We first consider Appellant's claim that his SVP designation violates his right to reputation under the Pennsylvania constitution. We begin with a brief background on SORNA and SVP designations. In **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) (plurality), our Supreme Court held that SORNA's sex offender registration requirements constituted punishment, and therefore retroactive application of those requirements violated the constitutional prohibition against *ex post facto* laws. Relying on **Muniz**, our Court held in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) ("**Butler I**"), that the registration requirements applicable to SVPS pursuant to SORNA I

constituted increased criminal punishment and that the procedure for conducting SVP determinations did not comply with **Alleyne**.

> [T]he lifetime registration, notification, and counseling requirements (RNC requirements) applicable to SVPs pursuant to 42 Pa.C.S. §§ 9799.15, 9799.16, 9799.26, 9799.27, and 9799.36 are increased criminal punishment such that the procedure for conducting SVP determinations violates the requirements of **Apprendi v. New Jersey**, 530 U.S. 466 (2000) and **Alleyne v. United States**, 570 U.S. 99 (2013).[3]
>
> ---
>
> [3] In **Apprendi** and **Alleyne**, the Supreme Court of the United States held any fact, which increases the statutory maximum penalty (**Apprendi**), or mandatory minimum sentence (**Alleyne**), must be submitted to a jury and proven beyond a reasonable doubt.

**Commonwealth v. Butler** ("**Butler II**"), 226 A.3d 972, 976 (Pa. 2020) (parallel citations omitted). Our Supreme Court reversed this Court's decision in **Butler I**, concluding that the "RNC requirements do not constitute criminal punishment and therefore the procedure for designating individuals as SVPs under Section 9799.24(e)(3) is not subject to the requirements of **Apprendi** and **Alleyne** and remains constitutionally permissible." **Butler II**, 226 A.3d at 976.[5]

---

[5] The issue of whether the SVP designation violates an individual's right to reputation under the Pennsylvania Constitution was raised in **Butler I** but was not reached in **Butler I** or **Butler II**. Appellant incorrectly states in his brief that, in **Butler II**, our Supreme Court remanded that issue to this Court for review. **See** Appellant's Br. at 50–51. In fact, our Supreme Court remanded **Butler II** directly to the Butler County Court of Common Pleas.

Prior to our Supreme Court's decision in **Butler II**, and in response to **Muniz** and **Butler I**, the General Assembly enacted Act 10, which split SORNA into two different subchapters, Subchapter H and Subchapter I.

> In response to **Muniz** and **Butler I**, the General Assembly enacted Act 10, specifically declaring that "[i]t is the intention of the General Assembly to address the Pennsylvania Supreme Court's decision in … **Muniz**… and the Pennsylvania Superior Court's decision in **Butler** [**I**]." 42 Pa.C.S. § 9799.11(4). Act 10 split SORNA, which was previously designated in the Sentencing Code as Subchapter H[,] into two subchapters. Revised Subchapter H applies to crimes committed on or after December 20, 2012, whereas Subchapter I applies to crimes committed after April 22, 1996, but before December 20, 2012. In essence, Revised Subchapter H retained many of the provisions of SORNA, while Subchapter I imposed arguably less onerous requirements on those who committed offenses prior to December 20, 2012, in an attempt to address this Court's conclusion in **Muniz** that application of the original provisions of SORNA to these offenders constituted an *ex post facto* violation.

**Commonwealth v. Torsilieri**, 232 A.3d 567, 580–81 (Pa. 2020).

Appellant sought relief from his SVP designation in 2020. At that time, he was no longer subject to the requirements of SORNA I. Rather, he was subject to the registration requirements mandated by Subchapter I of SORNA II because he committed his offenses prior to December 20, 2012. Our Supreme Court held in **Commonwealth v. Lacombe**, 234 A.3d 602, 605–06 (Pa. 2020), that Subchapter I of SORNA II "is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws."

While the **Lacombe** Court found Subchapter I constitutional, it did not address whether Subchapter I's SVP designation violates the right to reputation as provided in the Pennsylvania Constitution. Thus, as a matter of

first impression, we now turn to that question. We begin with our standard of review.

> When an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law. ***See Commonwealth v. Atwell***, 785 A.2d 123, 125 (Pa. Super. 2001) (citation omitted). Our consideration of questions of law is plenary. ***See id.***, 785 A.2d at 125 (citation omitted). A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. ***See Commonwealth v. Etheredge***, 794 A.2d 391, 396 (Pa. Super. 2002) (citations omitted). Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion. ***See id.***, 794 A.2d at 396 (citation omitted).

***Commonwealth v. Manzano***, 237 A.3d 1175, 1179–80 (Pa. Super. 2020) (quoting ***Commonwealth v. Howe***, 842 A.2d 436, 441 (Pa. Super. 2004)). The Pennsylvania Constitution recognizes the right to reputation as a fundamental interest.

> [I]n Pennsylvania, reputation is an interest that is recognized and protected by our highest state law: our Constitution. Sections 1 and 11 of Article I make explicit reference to "reputation," providing the basis for this Court to regard it as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection.

***R. v. Commonwealth, Dep't of Pub. Welfare***, 636 A.2d 142, 149 (Pa. 1994) (citation omitted). ***See also Torsilieri***, 232 A.3d at 585 ("[U]nlike the federal constitution, the Pennsylvania Constitution specifically protects the right to reputation as a fundamental right in Article I, Section 1, which provides: 'All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property and

reputation, and of pursuing their own happiness.'"). We apply a multi-part test in analyzing the constitutionality of laws that infringe upon fundamental rights, such as the right to reputation.

> The constitutional analysis applied to the laws that impede upon these inalienable rights is a means-end review, legally referred to as a substantive due process analysis. Under that analysis, courts must weigh the rights infringed upon by the law against the interest sought to be achieved by it, and also scrutinize the relationship between the law (the means) and that interest (the end). Where laws infringe upon certain rights considered fundamental, … courts apply a strict scrutiny test. Under that test, a law may only be deemed constitutional if it is narrowly tailored to a compelling state interest.

*Nixon v. Commonwealth*, 839 A.2d 277, 286–87 (Pa. 2003) (citations omitted).

Appellant has a protected fundamental interest in his reputation, which he argues will be harmed by his having to register as an SVP. Thus, we "focus on the extent to which the [sex offender] information … is readily available and/or accessible." *R.*, 636 A.2d at 149. Subchapter I of SORNA II details, in pertinent part, the following RNC requirements.

> In [Subchapter I of SORNA II], the General Assembly, *inter alia*, eliminated a number of crimes that previously triggered application of SORNA [I] and reduced the frequency with which an offender must report in person to the Pennsylvania State Police (PSP). With regard to Subchapter I, the General Assembly declared its intent that the statute "shall not be considered as punitive." 42 Pa.C.S. § 9799.51(b)(2).
>
> To achieve its dual goals of ensuring public safety without creating another unconstitutionally punitive scheme, the General Assembly made a number of material changes to the operation of SORNA [II]. The provisions of Subchapter I most relevant to our present analysis follow:

• Subchapter I applies to those convicted of a sexually violent offense after April 22, 1996, but before December 20, 2012. 42 Pa.C.S. § 9799.52(1), (2).

• Those convicted of one of the triggering offenses must register either for a period of ten years or for life. 42 Pa.C.S. § 9799.55(a), (b). Those offenders designated as SVPs must register for life. *Id.* § 9799.55(b)(3).

\*\*\*

• Persons convicted of the following crimes, SVPs, and offenders convicted of two or more of the ten-year reporting crimes are subject to lifetime registration: rape, IDSI, sexual assault, aggravated indecent assault, and incest with a child under the age of twelve. 42 Pa.C.S. § 9799.55(b).

\*\*\*

• A non-SVP must report in person once per year at an approved facility to verify their residence and be photographed. 42 Pa.C.S. §§ 9799.60(b), 9799.54(b). An SVP must report in person four times per year. *Id.* § 9799.60(a).

• All offenders must contact the PSP within three days of any change to their registration information, including changes to residence, employment, or education. However, Subchapter I does not require that the offender must appear in person to satisfy this obligation. 42 Pa.C.S. § 9799.56(a)(2).

• Generally, failure to comply with the registration requirements results in a felony prosecution. 42 Pa.C.S. § 9799.60(e); 18 Pa.C.S. § 4915.2(b), (c).

• The subchapter also establishes a website to be operated in conjunction with the statewide registry. The website [publishes] the following information as to each offender: (1) name and known aliases; (2) year of birth; (3) the address, municipality, county, and zip code of any residence at which the offender lives; (4) the location of any schools attended by the offender; (5) the address of any

employment location; (6) a photograph of the offender that must be updated at least once per year; (7) a physical description of the offender, including sex, height, weight, eye color, hair color, and race; (8) any identifying marks, including tattoos, scars, or birthmarks; (9) the license plate number and a description for any vehicle owned or registered to the offender; (10) a status report regarding whether the offender is compliant with the terms of SORNA [II]; (11) an indication of whether the offender's victim was a minor; (12) a description of the offense committed by the offender; (13) the dates of the offense and conviction; and (14) the location of the offender's temporary shelter and where the offender receives mail, if the offender is homeless. 42 Pa.C.S. § 9799.63(c).

• If a member of the public so desires, the website will alert that person by electronic notification if an offender moves in or out of the geographic area designated by the person. 42 Pa.C.S. § 9799.63(b)(7).

• Finally, an SVP or lifetime reporter can petition a court to be removed from the statewide registry. At the time of the petition, the SVP must not have been convicted of any crime punishable by one year or longer after being released from prison or after registering for the first time, whichever is later, for a period of twenty-five years. Also, the offender must be reviewed by a member of the Sexual Offender Assessment Board [("SOAB")]. The SVP or lifetime reporter must demonstrate by clear and convincing evidence that he or she no longer poses a risk, or a threat of risk, to the public or any individual person. 42 Pa.C.S. § 9799.59(a).

***Lacombe***, 234 A.3d at 615–17.

Although ***Lacombe*** discussed Subchapter I of SORNA II in the context of whether it constituted punishment, its findings regarding whether Subchapter I's requirements had historically been regarded as punishment are instructive on Subchapter I's reach and capacity to impact one's reputation.

Specifically, it found that the requirements of Subchapter I are akin to public shaming. *Lacombe*, 234 A.3d at 623.

> Similar to SORNA [I], Subchapter I directs the PSP "shall" operate and maintain a publicly accessible internet website and upload a plethora of information about each offender. 42 Pa.C.S. § 9799.63(b), (c). Subchapter I further directs the PSP to "develop, implement and maintain a process which allows members of the public to receive electronic notification when an individual required to register under [Subchapter I] moves into or out of a user-designated location." *Id.* § 9799.63(b)(7).

*Id.*; *see also Commonwealth v. Perez*, 97 A.3d 747, 766 (Pa. Super. 2014) (Donohue, J., concurring) (discussing SORNA I and noting that "[t]he public internet website utilized by the [PSP] broadcasts worldwide, for an extended period of time, the personal identification information of individuals who have served their 'sentences.' This exposes registrants to ostracism and harassment without any mechanism to prove rehabilitation—even through the clearest proof"). Because the RNC requirements pursuant to Subchapter I are so wide-reaching as to result in ostracization, we conclude that it infringes on the right to reputation. However, our analysis does not end there.

Next, we must weigh the infringement of this right against the interest sought to be achieved by the government. The *Lacombe* Court discussed the stated purpose of Subchapter I as follows.

> [T]he General Assembly declared that the purpose of Subchapter I is to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood." 42 Pa.C.S. § 9799.51(b)(1). Such purpose is based on the General

- 11 -

Assembly's finding that "sexually violent predators and offenders pose a high risk of engaging in further offenses even after being released from incarceration or commitments, and protection of the public from this type of offender is a paramount government interest." *Id.* § 9799.51(a)(2).

*Lacombe*, 234 A.3d at 625.

Considering the relationship between the means and the end, an SVP is defined by Subchapter I as follows.

[A] person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under section 9799.58 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses or who has ever been determined by a court to have a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses under a former sexual offender registration law of this Commonwealth.

42 Pa.C.S. § 9799.53. Section 9799.58, which details the procedure for deeming an individual to be an SVP, provides in relevant part, as follows.

(a) Order for assessment.--After conviction but before sentencing, a court shall order an individual convicted of an offense specified in section 9799.55 (relating to registration) to be assessed by the [SOAB]. The order for an assessment shall be sent to the administrative officer of the [SOAB] within 10 days of the date of conviction.

(b) Assessment.--Upon receipt from the court of an order for an assessment, a member of the [SOAB] as designated by the administrative officer of the [SOAB] shall conduct an assessment of the individual to determine if the individual should be classified as a[n SVP]. The [SOAB] shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) A mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

(c) Release of information.--All State, county and local agencies, offices or entities in this Commonwealth, including juvenile probation officers, shall cooperate by providing access to records and information as requested by the [SOAB] in connection with the court-ordered assessment and the assessment requested by the Pennsylvania Board of Probation and Parole….

(d) Submission of report by [SOAB].--The [SOAB] shall have 90 days from the date of conviction of the individual to submit a written report containing its assessment to the district attorney.

(d.1) Summary of offense.--The [SOAB] shall prepare a description of the offense or offenses which trigger the application of this subchapter to include, but not be limited to:

(1) A concise narrative of the offender's conduct.

(2) Whether the victim was a minor.

(3) The manner of weapon or physical force used or threatened.

(4) If the offense involved unauthorized entry into a room or vehicle occupied by the victim.

(5) If the offense was part of a course or pattern of conduct involving multiple incidents or victims.

(6) Previous instances in which the offender was determined guilty of an offense subject to this subchapter or of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses).

(e) Hearing.--

(1) A hearing to determine whether the individual is a[n SVP] shall be scheduled upon the praecipe filed by the district attorney. The district attorney upon filing a praecipe shall serve a copy of the same upon defense counsel together with a copy of the report of the [SOAB].

(2) The individual and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the

right to cross-examine witnesses. In addition, the individual shall have the right to counsel and to have a lawyer appointed to represent the individual if he or she cannot afford one. If the individual requests another expert assessment, the individual shall provide a copy of the expert assessment to the district attorney prior to the hearing.

(3) At the hearing prior to sentencing, the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n SVP].

(4) A copy of the order containing the determination of the court shall be immediately submitted to the individual, the district attorney, the Pennsylvania Board of Probation and Parole, the Department of Corrections, the [SOAB] and the [PSP].

42 Pa.C.S. § 9799.58.

Although an SVP designation and the concomitant RNC requirements infringe upon a defendant's right to reputation, it is only after the above-detailed assessment and hearing process that an individual may be subject to that infringement. Upon review, we conclude that this procedure comports with due process and that Subchapter I is narrowly tailored to its compelling state purpose of protecting the public "from those who have been found to be dangerously mentally ill." **Butler II**, 226 A.3d at 992–93 (citation omitted). Accordingly, we hold that SVP designations under Subchapter I of SORNA II are constitutional and do not violate the right to reputation under Pennsylvania's constitution. Thus, Appellant is not entitled to relief on this claim.

Next, Appellant challenges the discretionary aspects of his sentence. A challenge to the discretionary aspects of sentencing is not automatically

reviewable as a matter of right. ***Commonwealth v. Hunter***, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue, we conduct the following analysis.

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

Appellant has fulfilled the first three prongs. With respect to the fourth prong, Appellant states in his Rule 2119(f) statement that the court essentially continued to impose the illegal ten-year mandatory minimum sentence and failed to consider the factors enumerated in 42 Pa.C.S. §§ 9721(b) and 9725 or order a new presentence investigation report. ***See*** Appellant's Br. at 26–29. Whether a substantial question exists is determined on a case-by-case basis. Here, we conclude that Appellant has raised a substantial question. ***See Commonwealth v. Kelly***, 33 A.3d 638, 640 (Pa. Super. 2011) (explaining that an allegation that the court imposed the sentence without considering the requisite statutory factors or providing adequate reasons for not ordering a pre-sentence report raises a substantial question).

An appellate court will not disturb the sentencing court's judgment absent a manifest abuse of discretion. In order to constitute an abuse

of discretion, "a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion." *Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa. Super. 2008). To demonstrate that the sentencing court abused its discretion, "the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003). "As long as the trial court's reasons demonstrate that it weighed the Sentencing Guidelines with the facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed." *Id.* at 1018–19.

Our Supreme Court "has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted). However, when a defendant appears before a court for resentencing, the sentencing judge should conduct the hearing as if for the first time.

> When a sentence is vacated and the case is remanded to the sentencing court for resentencing, the sentencing judge should start afresh. *Commonwealth v. Losch*, 535 A.2d 115 (Pa. Super.

1987). "Reimposing a judgment of sentence should not be a mechanical exercise." *Id.* at 122. "Given the important nature of the interests involved, the judge at the second sentencing hearing should reassess the penalty to be imposed on the defendant—especially where defense counsel comes forward with relevant evidence which was not previously available." *Id.* Thus, [a defendant's] conduct since the prior sentencing hearing is relevant at resentencing. *Id.* at 123. The sentencing judge must take note of this new evidence and reevaluate whether the jail term which [a defendant] received is a just and appropriate punishment. *Id.*

*Commonwealth v. Serrano*, 150 A.3d 470, 473 (Pa. Super. 2016) (parallel citations and brackets in original omitted) (quoting *Commonwealth v. Jones*, 640 A.2d 914, 919–20 (Pa. Super. 1994)).

At Appellant's resentencing hearing, the sentencing court did not have the benefit of an updated pre-sentence investigation report, nor did it have any information pertaining to Appellant's conduct after he began serving his sentence in 2014. *See* N.T., 3/6/2020, at 8-9. In imposing the same aggregate sentence, the sentencing court explained as follows:

Now, the reason for this sentence, [Appellant], is all the things I noted in the original sentence from [2014], were noted on the record at that time. There was a comprehensive sentencing scheme that I worked out at that time taking into account the mandatories that were involved, and those have been removed by decisional law. The [c]ourt is going to sentence you basically at count one and two[, the two counts of IDSI]. The other counts get reaffirmed in their entirety to achieve the sentencing scheme that I originally laid out. The sentences at counts one and two are within the standard range of sentence. They are, however, consecutive to each other. … Total sentence imposed is the same as the original, one eighty-two minimum, three sixty-four maximum months.

N.T., 3/6/2020, at 12–13, 15.

At the original sentencing hearing, the court noted that it was familiar with the case as the presiding judge at the jury trial and had considered the sentencing guidelines, the pre-sentence report, the findings of the SOAB, and the then-mandatory minimum sentences that the court was required to impose for the IDSI convictions. N.T., 2/19/2014, at 53. Appellant asked the court not to impose the mandatory minimum sentences, but the court noted that it was bound by those mandatory minimum sentences and that failure to impose them would result in this Court sending the case back. *Id.* at 45–46. The court did, however, state that it was imposing them concurrently to avoid giving Appellant a life sentence. *See id.* at 53. Thus, it is evident that the court initially imposed the mandatory minimum sentences not because it found them appropriate, but because it was required to impose them, and it deliberately imposed the shortest possible sentence it could for those convictions. In reimposing the same aggregate sentence for the IDSI convictions, the trial court did not explain why it deemed that sentence appropriate.

We are cognizant that, unlike *Serrano*, the same judge who presided over Appellant's trial and original sentence also imposed his new sentence. Additionally, we recognize that Appellant's new IDSI sentences are within the standard range of the sentencing guidelines and do not violate *Alleyne*. However, that does not absolve the court from the requirement to impose an

- 19 -

individualized sentence. It is evident from the record that the sentencing court did not "start afresh" but instead mechanically reimposed the same aggregate sentence without explanation as to why such a sentence was individualized to Appellant and without consideration of his conduct over the preceding six years. *Jones*, 640 A.2d at 920. "This was not only an abuse of the court's discretion, but a complete failure to exercise that discretion." *Serrano*, 150 A.3d at 475.

Accordingly, we vacate Appellant's judgment of sentence and remand for resentencing. Upon remand, the sentencing court "should start afresh" and "reassess the penalty to be imposed" upon Appellant. *Jones*, 640 A.2d at 919-20.

SVP designation affirmed. Judgment of sentence vacated. Case remanded for resentencing in accordance with the dictates of this Opinion. Jurisdiction relinquished.

Judge Murray joins the opinion.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2021